CITIZENS FOR CLEAN AIR & WATER IN PUEBLO AND SOUTHERN COLORADO and Clean Energy Action, Plaintiffs–Appellants,

v.

COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, AIR POLLUTION CONTROL DIVISION, Defendant–Appellee

and

Public Service Company of Colorado, Intervenor–Appellee.

No. 06CA1581.

Colorado Court of Appeals, Div. II.

Feb. 7, 2008.

Angelique Layton Anderson, Louisville, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, William C. Allison V, First Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Hogan & Hartson L.L.P., Dennis L. Arfmann, Robert C. Troyer, Denver, Colorado, for Intervenor–Appellee.

Opinion by Judge KAPELKE.*

In this proceeding for judicial review of administrative agency action, plaintiffs, Citizens for Clean Air & Water in Pueblo and Southern Colorado and Clean Energy Action, appeal the district court's summary judgment affirming the issuance by the Air Pollution Control Division, Colorado Department of Health and Environment (the Division), of construction permits to Public Service Company of Colorado (PSCo). We affirm.

In 2004, PSCo applied to the Division for permits to construct a new coal-fired electrical generation unit (Unit 3) at its existing

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Comanche power plant near Pueblo, Colorado. As part of the project, PSCo also proposed adding pollution controls to the two existing units (Units 1 and 2) in order to reduce nitrogen oxide (NOx) emissions from both those units and sulfur dioxide (SO2) emissions from Unit 2.

During the application period, PSCo met with numerous environmental and citizen groups to discuss and address their concerns regarding construction of the proposed Unit 3. PSCo eventually entered into a settlement agreement with the Concerned Environmental and Community Parties, a coalition of nine local, regional, and national groups: Western Resource Advocates, Sierra Club, Environmental Defense, Environment Colorado, Better Pueblo, the Diocese of Pueblo, Southwest Energy Efficiency Project, Colorado Renewable Energy Society, and Smart Growth Advocates.

PSCo agreed, among other things, to install pollution controls for SO2 and NOx at Comanche Unit 3; to install additional SO2 and NOx controls at Units 1 and 2; and to control mercury emissions at all three of the units.

PSCo submitted to the Division a revised construction permit application, which incorporated the relevant terms of the settlement agreement and addressed both the construction of Unit 3 and the modifications of Units 1 and 2 provided for in the agreement. After reviewing the revised application, the Division issued draft permits and a draft preliminary analysis pursuant to Air Quality Control Commission (AQCC) regulations. 5 Code Colo. Regs. 1001–5. The Division published a public notice regarding the draft permits and received numerous public comments. The Division issued a detailed response to the comments and also held a public comment hearing.

Following the Division's issuance of the final permits, plaintiffs brought this action in the district court for judicial review, pursuant to the Colorado Administrative Procedures Act, section 24–4–106(7) and (11),

§ 24–51–1105, C.R.S.2007.

C.R.S.2007, contending that the Division's actions were contrary to law, an abuse or unwarranted exercise of discretion, contrary to the state and federal air quality control requirements, and clearly erroneous. PSCo is an intervenor in this proceeding.

The district court granted the Division's motion for summary judgment and affirmed the actions of the Division.

## I.

■ Plaintiffs contend that the Division acted arbitrarily, capriciously, and in violation of state and federal statutes by failing to investigate and take into consideration a notice of violation (NOV) that the Environmental Protection Agency (EPA) had issued to PSCo in 2002 regarding the Comanche facility, and that such an investigation is a precondition to issuance of the construction permits. We disagree.

■ In a proceeding for judicial review of administrative agency action, the district court is limited to determining whether the agency's actions were arbitrary and capricious, an abuse of discretion, or contrary to law. § 24–4–106(7). The court may not substitute its judgment for that of the agency where there is substantial evidence supporting the agency's decision. *Bodaghi v. Dep't. of Natural Res.*, 995 P.2d 288, 303 (Colo. 2000).

■ In an appeal from the district court's ruling in such a judicial review proceeding, we review the decision of the administrative body itself, not that of the court. *See City of Colorado Springs v. Securcare Self Storage, Inc.*, 10 P.3d 1244 (Colo.2000).

■ In undertaking the same review as the district court, we must determine whether the Division applied the correct legal standard and whether there is competent evidence to support the Division's exercise of discretion. *McCann v. Lettig*, 928 P.2d 816 (Colo.App.1996). We review the Division's interpretations of law de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152 (Colo.2000).

Plaintiffs rely on section 25–7–115(2), C.R.S.2007, which provides that the Division "shall cause a prompt investigation to be made" if a written and verified complaint is filed with the Division alleging that any person is failing to comply with the regulations, with an order, or with any term or condition of a required permit that has been issued.

We agree with the Division, however, that section 25–7–115(2) addresses *enforcement* of air quality laws and regulations, that it is not part of the permitting scheme, and that it does not create a separate *permitting* requirement under Colorado's prevention of significant deterioration (PSD) air permitting program. Accordingly, we reject plaintiffs' contention that an investigation of an NOV pursuant to section 25–7–115(2) is required prior to or as a condition of issuance of a new permit.

Further, while the Division has acknowledged that it did not pursue an independent investigation of the allegations of the EPA's NOV, all the parties have acknowledged that an NOV is in the nature of an allegation, not an actual determination, that a violation has occurred. *See, e.g., Royster–Clark Agribusiness, Inc. v. Johnson*, 391 F.Supp.2d 21, 27 (D.D.C.2005). Notably, the EPA has taken no further steps toward enforcement with respect to the 2002 NOV, and, although it participated in the review process for the Comanche project, it did not object to issuance of the permits. Accordingly, we reject plaintiffs' contention.

## II.

Plaintiffs next contend that the Division failed to follow the requirements of AQCC Regulation 3, parts A, B, C, and D in permitting Comanche Unit 3. We perceive no basis for reversal.

In evaluating the permit application for the Comanche project, the Division applied the PSD permitting and emissions netting procedures for "single sources" under Regulation 3, part D. Plaintiffs maintain that the application should have been evaluated under different procedures, basing their argument on the premise that Unit 3 is a "separate source".

■ An agency's interpretation of its own regulations and statutory schemes is

entitled to deference and must be accepted if there is a reasonable basis in the law. *Ohlson v. Weil,* 953 P.2d 939, 941 (Colo.App. 1997). In addition, we must accord substantial deference to an agency when it resolves issues within its particular area of authority and expertise. *G & G Trucking Co. v. Pub. Utils. Comm'n,* 745 P.2d 211, 216 (Colo.1987).

A "stationary source" is defined as "[a] ny building, structure, facility, installation, or any combination thereof belonging to the same industrial grouping ... that is located on one or more contiguous or adjacent properties and that is owned or operated by the same person." Reg. 3, pt., A § I.B.41.

■ Here, Unit 3 is a structure belonging to the same industrial grouping as Comanche Units 1 and 2 and is located on a property contiguous to those units. Also, all three units are operated by the same entity. In light of these facts, and given the broad definition of "stationary source," we conclude that the Division did not act arbitrarily or contrary to law in determining that Unit 3 is not a separate source.

In light of its determination that Unit 3 is not a separate source, the Division properly applied the intra-source calculation provided for under Regulation 3, part D. The Division determined that Unit 3 was not subject to PSD requirements for SO2 and NOx emissions because the new pollution controls at Units 1 and 2 would result in an overall *substantial net decrease* in emissions of SO2 and NOx from the Comanche facility.

Pursuant to section 25–7–109(9)(b)(II), C.R.S.2007, "each pollutant for which the project results in a significant emissions increase shall be subject to the [PSD] program only if the sum of all source-wide, non-*de minimis,* contemporaneous, and creditable emissions increases and decreases of that pollutant exceed significance levels."

PSD regulations are intended to prevent significant deterioration of air quality that can be caused when modifications are made to emission sources. *See* Reg. 3, pt. D, § I.A.1. A review of the administrative record here reveals that the Division addressed the emission levels of Unit 3 and that those levels were considered in conjunction with

the reduction in emissions from Units 1 and 2. The record supports the Division's determination that, as a result of the permitted construction, the total net emissions from the Comanche project would fall below the significant levels for SO2 and NOx.

Therefore, we conclude that the Division did not abuse its discretion or act contrary to law in determining that the Comanche Unit 3 was not subject to PSD requirements for SO2 and NOx.

III.

Plaintiffs contend that the Division acted arbitrarily, capriciously, and contrary to law by failing to follow proper procedures in analyzing the best available control technology (BACT) for Comanche Units 1, 2 and 3. Again, we disagree.

As plaintiffs acknowledge in their opening brief,

BACT legislation and statutory requirements do not address the specific details of coal-fired power plant design. Coal plant design involves a variety of technical decisions that are not part of the permitting process. BACT only requires the decision maker to evaluate the technological possibilities of pollution control with respect to coal-fired power plants and make a determination about what can be achieved.

■ Here, PSCo submitted BACT analyses for all pollutants for which there would be a significant emissions increase. It was not required, however, to submit such an analysis for SO2 and NOx because, as discussed, as a result of the modifications at Units 1 and 2, emissions of those pollutants from the Comanche project would be below the PSD significance levels.

Under Regulation 3, part D, section II.A.42, the significance level for SO2 is forty tons per year, as is the significance level for NOx. The record supports the Division's determination that the construction of Unit 3, considered in concert with the emissions resulting from the modifications at Units 1 and 2, would result in emissions of both SO2 and NOx below those significance levels.

Plaintiffs assert that the Division acted arbitrarily, capriciously, and contrary to law in failing to consider integrated gasification combined cycle (IGCC) technology as part of its BACT analysis. According to Regulation 3, part D, section II.A.8, in conducting its BACT analysis, the Division is required to take into consideration "energy, environmental, and economic impacts and other costs".

The record indicates that PSCo provided the Division an evaluation with respect to IGCC, which included an economic analysis and also an analysis concerning technological feasibility.

The Division, based on its "review of the information contained in the application and other available resources," concluded that IGCC "is not truly commercially available at this time, since most IGCC projects have been co-funded as demonstration projects and no single company is producing a packaged turnkey IGCC process with performance guarantees." Under the circumstances, the Division's determination that IGCC was not the best control technology for Unit 3 is not arbitrary, capricious, or contrary to law.

Relying on *Alaska Department of Environmental Conservation v. EPA*, 540 U.S. 461, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) *(ADEC)*, plaintiffs argue that the Division improperly delegated its BACT decision-making authority to PSCo and the "concerned environmental parties" that were signatories to the settlement agreement.

The record reflects, however, that the Division reviewed, analyzed, and considered PSCo's submissions, that it challenged some of PSCo's input, and that it disagreed with aspects of PSCo's position regarding the applicability of BACT with respect to certain pollutants.

Further, the situation in the *ADEC* case relied on by plaintiffs is distinguishable from that here. In *ADEC*, the EPA disagreed with the state's BACT analysis and issued a stop work order. Here, the EPA did not disagree with the Division's findings, including those made in PSCo's top down analysis. Moreover, in *ADEC*, unlike here, the record did not support the state's BACT conclusions. Because the record here demon-strates that the Division considered and analyzed not only PSCo's submissions regarding BACT, but also information received from various other sources, we reject plaintiffs' contention.

## IV.

Plaintiffs next contend that the Division unjustifiably failed to obtain and review original visibility data from the National Park Service. We reject the contention.

Regulation 3, part D, section XII. C and part F, section I.C allow the Division to determine independently whether there are adverse visibility impacts "if the federal land manager fails to make such a determination or such determination is in error."

Here, the National Park Service, acting as federal land manager for Great Sand Dunes National Park, reviewed the proposal for Comanche Unit 3, as well as the settlement agreement. The Service, in a letter from the Acting Director of the Intermountain Region, concluded that the construction of Comanche Unit 3, "if built pursuant to the draft pre-construction permit, as amended, will not result in an adverse impact upon the air quality related values, including visibility, of Class I and Class II areas in Colorado for which [the Service has] responsibility."

Relying on *Montana Environmental Information Center and Environmental Defense v. Montana Department of Environmental Quality*, 326 Mont. 502, 112 P.3d 964 (2005), plaintiffs argue that the Division should have obtained and reviewed the original visibility data from the National Park Service rather than rely on the Service's own interpretation of the data. In that case, however, the Montana Supreme Court did not hold that the state department had a duty to review the original data of the National Park Service, but rather that the department had to make its own "independent determination" of potential visibility impacts in Class I areas. The court stated: "[T]he Department's own regulations require it to make its own independent determination on the issue by considering all the information presented to it. The Department may not simply defer to the opinion of the relevant

[federal land managers]." *Montana Envtl.,* 112 P.3d at 972.

Here, the record demonstrates that the Division reviewed modeling submitted by PSCo, and requested revised modeling runs for visibility and additional modeling information for other air quality related values. The Division reviewed and analyzed that information in ultimately arriving at its own conclusion, supported by the record, that the Comanche Unit 3 project would not have adverse impacts on air quality in either Class I or Class II areas.

Plaintiffs have not shown that the Division abdicated its responsibilities in this regard or otherwise acted arbitrarily, capriciously, or contrary to law.

## V.

█ Finally, plaintiffs contend that the Division did not give adequate consideration to the evidence submitted during the public comment period regarding alternatives to Comanche Unit 3.

Because this argument was not presented to, considered by, or ruled on in the district court, plaintiffs may not be raise it for the first time on appeal. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992). Accordingly, we decline to consider the contention.

The judgment is affirmed.

MÁRQUEZ and METZGER *, JJ., concur.