**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHELE KENNETT, individually and
on behalf of the Rule 23 Class,

    Plaintiff - Appellee,

v.

BAYADA HOME HEALTH CARE,
INC.,

    Defendant - Appellant.

No. 19-1004
(D.C. No. 1:14-CV-02005-CMA-NRN)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **KELLY**, and **BACHARACH**, Circuit Judges.

---

Defendant-Appellant Bayada Home Health Care, Inc. ("Bayada") appeals

from the district court's order denying its motion for summary judgment and

granting Plaintiff-Appellee Michele Kennett's ("Ms. Kennett") cross-motion for

summary judgment. The parties' dispute centers on the scope of Colorado's

wage-and-hour regulations.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Under Colorado's Minimum Wage Order (the "Wage Order"), employers must pay their employees time-and-a-half wages for overtime work, with some job classifications exempted from the overtime requirement.[1] The scope of one of those exemptions—the "companionship exemption"—is the subject of this case. Under the companionship exemption, employers need not pay overtime to "companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences." 7 COLO. CODE REGS. § 1103-1:5 (2019).[2] The question before us is whether the phrase

---

[1]     The Wage Order—which is promulgated by the Colorado Division of Labor (the "Division")—has been amended many times, and different numbers govern different time periods. The versions of the Wage Orders in effect during the time period that gives rise to this lawsuit are Nos. 30 and 31. These two Wage Orders contain identical language with respect to the "companionship exemption" at issue in this appeal. Accordingly, we refer to them both collectively as "the Wage Order."

[2]     As we have noted, the Wage Order regulation has been amended frequently. The language at issue in this appeal—found in Wage Orders Nos. 30 and 31—remained in effect through 2019 and the early months of 2020. The most recent version of the Wage Order containing this language—that is, Wage Order No. 35—became effective at the beginning of 2019. For convenience, we cite to this version of the Wage Order. *See generally Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 727–28 & nn. 3–4 (10th Cir. 2020) (citing and discussing this same Wage Order). Notably, the Division recently promulgated a new version of the Wage Order—found in Wage Order No. 36—which supersedes all prior versions; it became effective on an emergency basis on March 16, 2020, and, as amended to its current form, became effective July 15, 2020. This new version of the Wage Order has completely removed the companionship-exemption language contained in earlier versions of the Wage Order. *See* 7 COLO. CODE REGS. § 1103-1:2.2.7 (2020) (providing an "exemption" that "covers the below-listed in-residence employees" but not including in the following list the companionship-exemption language).

2

"employed by households or family members to perform duties in private residences" (referred to herein as the "household modifier") modifies only "domestic employees" or all three occupations—that is, also includes "companions" and "casual babysitters." If the former (i.e., modifies only "domestic employees")—the reading Bayada advances—then *all* companions, irrespective of the nature of their employer, are exempt from the overtime requirement. If the latter (i.e., modifies all three occupations)—the reading Ms. Kennett advances—then only companions employed directly by households or family members, as opposed to companions employed by all types of employers, including third-party employers like Bayada, are exempt.

Unfortunately for Ms. Kennett, we resolved this issue in a recent, published decision, *Jordan v. Maxim Healthcare Services, Inc.*, wherein we concluded that "the companionship exemption applies to all companions—including those employed by third-party employers." 950 F.3d 724, 731 (10th Cir. 2020). We are bound by this decision, which governs all salient issues in this case. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **reverse** the district court's judgment and **remand** for further proceedings consistent with this order and judgment.

# I

Bayada is a healthcare company that provides in-home nursing services to its clients. Ms. Kennett worked for Bayada as a Home Health Aide ("HHA"). It

is undisputed that Ms. Kennett and her fellow HHAs were "companions" under Colorado law and that Bayada did not pay them overtime. Ms. Kennett filed a class action complaint against Bayada on behalf of herself and other HHAs for allegedly violating the Wage Order by failing to pay overtime. Bayada moved for summary judgment on the ground that the HHAs fall under the Wage Order's companionship exemption for overtime pay. Ms. Kennett cross-moved for summary judgment on the basis that the HHAs do *not* fall under the companionship exemption.

The district court denied Bayada's motion and granted Ms. Kennett's cross-motion. In reaching its decision, the district court held that the "only grammatically sound reading of the statute . . . dictates that the household [modifier] is equally applicable to the antecedents 'companions' and 'casual babysitters' as it is to 'domestic employees.'" Aplt.'s App., Vol. III, at 525a (Order Denying Def.'s Mot. for Summ. J. & Granting Pl.'s Cross Mot. for Summ. J., entered Sept. 24, 2015). The district court also found that its holding was supported by the series-qualifier canon, and that the Colorado Division of Labor's (the "Division") contrary interpretation of the regulation was not entitled to any deference. *Id*. at 525a–531a. Consequently, the district court held that the Wage Order's companionship exemption did not apply to Bayada's HHAs because they were not employed directly by a household or family member. Bayada now appeals from this decision.

4

## II

We review the grant or denial of summary judgment *de novo*, applying the same legal standard as the district court. *See, e.g.*, *Nielson v. Ketchum*, 640 F.3d 1117, 1121 (10th Cir. 2011). Summary judgment will be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). We also review the district court's "conclusions on legal issues de novo . . . and need not defer to its decisions on questions of law." *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1294–95 (10th Cir. 2010) (quoting *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996)).

"In a diversity case like this one, [where] the substance . . . is a matter of state law . . . . our task is 'not to reach [our] own judgment regarding the substance of the common law, but simply to ascertain and apply the state law.'" *Id.* at 1295 (second alteration in original) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). Critically for this appeal, "we are bound by 'our own precedent interpreting a state's law.'" *Jordan*, 950 F.3d at 731 (quoting *United States v. Badger*, 818 F.3d 563, 569 (10th Cir. 2016)); *see*

5

*also Kokins*, 621 F.3d at 1295 ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." (alteration in original) (emphasis omitted) (quoting *Wankier*, 353 F.3d at 866)).

### III

At issue in this appeal is whether "companions," like Ms. Kennett, who are employed by third-party employers, fall within the Wage Order's companionship exemption. Bayada contends that they do because the household modifier applies only to "domestic employees"—therefore, *all* companions are exempt, including those employed by third-party employers. Bayada reaches this conclusion by arguing that (1) the Wage Order is ambiguous; (2) the district court should have applied the last-antecedent rule instead of the series-qualifier canon of statutory construction in construing the Wage Order; and (3) the Division's interpretation of the companionship exemption as applying to all companions, including those employed by third-party employers, is entitled to deference.

Ms. Kennett contends the opposite. That is, she contends that companions employed by third-party employers do *not* fall within the Wage Order's companionship exemption because the household modifier applies to "domestic employees," "babysitters," *and* "companions." More specifically, Ms. Kennett argues the district court correctly concluded that (1) the Wage Order is

6

unambiguous; (2) the Wage Order's plain meaning, as elucidated by applying the series-qualifier canon, compels a finding that only companions employed by households or family members are exempt from overtime payments; and (3) the Division's interpretation of the Wage Order and the companionship exemption is not entitled to deference.

We are constrained to conclude that, generally speaking, Bayada has the better of the argument. As noted *supra*, we recently addressed the issue of the companionship exemption's breadth in *Jordan v. Maxim Healthcare Services, Inc.*[3] In *Jordan*, we held that the Wage Order's companionship exemption covers *all* companions, including those employed by third-party employers. *See* 950 F.3d at 731. That holding governs this case. We therefore reverse the district court's contrary judgment.

We explain our holding in three steps, relying on our analysis in *Jordan* along the way. *First*, we conclude that the Wage Order is ambiguous. *Second*, we hold that the district court erred by applying the series-qualifier canon. *Third*, we conclude that the Division's interpretation, even if not entitled to deference, is at least persuasive authority.

---

[3]    In its 28(j) letter, Bayada "submits that both the rationale and holding in the *Jordan v. Maxim Healthcare Services* decision are directly applicable to and controlling in the instant appeal." *See* Aplt.'s 28(j) Letter at 1–2 (filed Feb. 25, 2020). Bayada similarly characterized the *Jordan* case as a "related appeal" that is "directly aligned" with and "present[s] the exact same issue" as the instant appeal. Oral Arg. at 0:23–0:45. Having now issued our published decision in *Jordan*, we agree with Bayada.

7

## A

"Colorado law governs '[o]ur interpretation and application of the Wage Order' and, more specifically, of the companionship exemption." *Jordan*, 950 F.3d at 731 (alteration in original) (quoting *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1160 (10th Cir. 2016)). Under Colorado law, "we interpret the companionship exemption according to Colorado's ordinary rules of statutory interpretation." *Id.* "The primary goal of interpretation is to 'give effect to the intent of the enacting body.'" *Id.* at 732 (quoting *United States v. Richter*, 796 F.3d 1173, 1185 (10th Cir. 2015)). To accomplish our goal, we "look to the plain meaning of the [regulatory] language and consider it within the context of the [regulation] as a whole." *Id.* (alterations in original) (quoting *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011)). But "to the extent that the language of a [regulation] is susceptible of more than one reasonable interpretation, and is therefore considered ambiguous, a substantial body of interpretive aids . . . is available to assist in determining which of these reasonable understandings embodies the [enacting body's] intent." *People v. Opana*, 395 P.3d 757, 760 (Colo. 2017) (citations omitted).

At the times of the events at issue here, Colorado's Wage Order exempted from its overtime provisions "companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences." 7 COLO. CODE REGS. § 1103-1:5. Bayada argues that the

8

district court erred when it held that the "only grammatically sound reading of th[is language] . . . dictates that the household [modifier] is equally applicable to the antecedents 'companions' and 'casual babysitters' as it is to 'domestic employees.'" Aplt.'s App., Vol. III, at 525a; *see* Aplt.'s Opening Br. at 18–20. According to Bayada, the companionship exemption is ambiguous because it is "susceptible to more than one reasonable interpretation or understanding, leading to different results." Aplt.'s Opening Br. at 23. In particular, Bayada contends the exemption is ambiguous because "the pertinent phrase 'employees employed by households or family members to perform duties in private residences' can reasonably be read as applying *either* to all of the enumerated occupations (i.e., companions, causal babysitters and domestic employees) *or* to only the occupation immediately preceding it (i.e., domestic employees)." *Id.*; *see People v. Weeks*, 369 P.3d 699, 711 (Colo. App. 2015) (holding that a statute was ambiguous where "the last phrase could be read as applying either to all of the enumerated [categories] or only to the last one").

We agree with Bayada. *See Jordan*, 950 F.3d at 733–34 (finding the companionship exemption ambiguous because it could plausibly be read as applying to all companions *or* only to companions "employed by households or family members to perform duties in private residences," and we lacked a "reasoned way to pick between [these two readings], absent an examination of the language's context"); *see also id*. at 735–39.

9

Ms. Kennett responds by arguing that Bayada's reading is "contrary to the unambiguous plain meaning of the text" because it would "introduce a superfluous 'and' in the middle of a list"—a result she describes as "grammatically grotesque." Aplee.'s Resp. Br. at 13. However, we rejected an identical argument in *Jordan*. *See* 950 F.3d at 734; *see also id.* at 735 (noting that "more often [than not], commas and conjunctions do not imbue a sentence with only one meaning," and that the "and" before domestic employees was "one such case"). We therefore reject Ms. Kennett's argument as well.

Accordingly, we conclude that the companionship exemption is ambiguous, and because of this conclusion, "we may 'look to other aids in construction' to pin down the [exemption's] proper scope." *Id*. at 739 (quoting *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010)). These aids include canons of statutory construction and the Division's interpretation of the companionship exemption. We address each in turn.

**B**

According to Bayada, the district court erred by applying the series-qualifier canon to conclude that the household modifier applied to all three occupations, including companions. Instead, Bayada argues, the district court should have interpreted the household modifier as applying only to domestic employees (the occupation immediately preceding the household modifier

10

language), consistent with the last-antecedent rule. We agree that the district court erred in applying the series-qualifier canon.

The series-qualifier canon dictates that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 615 (10th Cir. 2018) (alteration in original) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012)). Conversely, the last-antecedent rule "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Jordan*, 950 F.3d at 746 (omission in original) (quoting *Lockhart v. United States*, 136 S. Ct. 958, 962 (2016)). Thus, if one were to apply the series-qualifier canon to the companionship exemption, one would conclude that the household modifier applies to all three occupations, including companions, such that companions employed by third-party employers are *not* covered by the exemption. On the other hand, if one were to apply the last-antecedent rule, one would conclude that the household modifier applies only to the occupation immediately preceding it (i.e., domestic employees) such that all companions—including those employed by third-party employers—are covered.

In *Jordan*, we noted that the series-qualifier canon is, "[p]erhaps more than most of the other canons, . . . highly sensitive to context." *Id.* at 745 (quoting

11

SCALIA & GARNER, *supra*, at 150).  "'Often the sense of the matter prevails' over the meaning the series-qualifier canon suggests."  *Id.* (quoting SCALIA & GARNER, *supra*, at 150).  Moreover, "like all canons of construction, [the series-qualifier canon] is merely an interpretive aid, not an absolute rule."  *Id.* (alteration in original) (quoting *Benefield v. Colo. Republican Party*, 329 P.3d 262, 267 (Colo. 2014)).  That is, "[i]ts utility depends on 'context and consideration of other, and often conflicting, interpretive aids.'"  *Id.* (quoting *Benefield*, 329 P.3d at 267).

Based on this understanding, we held in *Jordan* that application of the series-qualifier canon to the companionship exemption was inappropriate, in light of the exemption's context.  *Id.*  ("In our view, the context is not suitable for application of the series-qualifier canon and, accordingly, the district court should have declined to apply it.").  Specifically, we concluded that application of the series-qualifier canon would "undermine" the Division's intent.  *Id*.  As implied by the ordinary and particular meanings of the terms, the Division intended that the companionship exemption "apply to those household workers who have a close personal connection to the recipients of their services," *including* "companions employed by third-party employers."  *Id.*

We determined further that "[t]he aptness of the series-qualifier canon in this context is . . . undermined" by other considerations:

12

> Most notably, using the series-qualifier canon here creates conflict with the enabling statute, which expressly requires that any overtime requirements for particular categories of employees "apply equally to all employers in such industry or occupation." COLO. REV. STAT. § 8-6-111(4). In particular, as most relevant here, applying the household modifier to the term "companions"—in line with the series-qualifier canon—would allow for the differential application of the companionship exemption to employers in the same industry or occupation, contrary to the mandate of the enabling statute. Not only that, but application of the series-qualifier canon also gives rise to surplusage. Given these signs that the context is not suitable for application of the series-qualifier canon, we believe the district court should have declined to apply it.

*Id.* Thus, because the series-qualifier canon conflicted with the enabling statute and the surplusage canon, we held that (1) application of the canon was inappropriate, and (2) the district court should have held that the household modifier applied to domestic employees only.

Ms. Kennett points out that the last-antecedent rule "has not been adopted by the general assembly [of Colorado] and does not create any presumption of statutory intent." COLO. REV. STAT. § 2-4-214. However, this simply means that we "cannot add [the last-antecedent rule] to the already lengthy list of reasons to part from the series-qualifier canon." *Jordan*, 950 F.3d at 747. We are still free "to eschew the series-qualifier canon and instead follow the context and other canons," which, as here, may yield a result that, in substance, is consistent with the application of the last-antecedent rule. *Id.* at 748; *see also Weeks*, 369 P.3d at 711 (holding that while § 2-4-214 precludes a "presum[ption] that the legislature

13

intended that the last phrase apply only to the last [category in a series]," it does not create a presumption "that the last phrase applies to all of the previously enumerated [categories in that series]" either).

In sum, these considerations "compel the conclusion that the companionship exemption applies to all companions—irrespective of whether their employers are households or family members on the one hand, or third-party companies, like [Bayada], on the other." *Jordan*, 950 F.3d at 750. "[W]e find [additional] persuasive support for our conclusion in the Division's longstanding and consistent interpretation of the companionship exemption," *id.*, to which we now turn.

## C

### 1

Bayada argues that the district court erred by refusing to defer to the Division's longstanding interpretation of its own regulation. As Bayada points out, the Division both promulgates and enforces the Wage Order. *See* COLO. REV. STAT. § 8-6-111(4); *see also* Aplt.'s Opening Br. at 30–31. In 2006, it issued an opinion letter explaining that the companionship exemption was intended to mirror the federal Fair Labor Standards Act (the "FLSA"). And the U.S. Department of Labor—the agency responsible for administering the FLSA—had promulgated regulations that, at the time, explicitly exempted companions employed by third-party employers from the FLSA's overtime requirements. *See*

14

Aplt.'s App., Vol. I, at 138a–139a (Colo. Dep't of Labor & Emp't, Div. of Labor, Op. Letter, dated Aug. 3, 2006); *see also Jordan*, 950 F.3d at 729, 750–51 (discussing this opinion letter). Thus, the Division had long interpreted the companionship exemption as extending to companions employed by third-party employers, just like the FLSA regulations. *See* Aplt.'s App., Vol. I, at 139a ("In concordance with applicable federal regulations . . . it is the Division's enforcement policy that the practice of applying the companionship exemption in situations involving third party employers is acceptable under [the] Colorado . . . Wage Order . . . ."); *see also* 29 C.F.R. § 552.109(a) (2014) ("Employees who are engaged in providing companionship services . . . and who are employed by an employer or agency other than the family or household using their services, are exempt from the [FLSA's] minimum wage and overtime pay requirements . . . .").[4]

The Division subsequently issued enforcement letters reiterating its position that "the treatment and interpretation of the companions[hip] exemption in the Wage Order is intended to mirror the current definition and associated regulations in federal law." Aplt.'s App., Vol. III, at 584a (Division's Resp. to Maxim Emp.'s 2014 Claim, dated July 23, 2014); *id.* at 588a (Division's Resp. to Maxim Emp.'s 2012 Claim, dated Aug. 28, 2012) ("The Wage Order provides

---

[4]    As will be discussed *infra*, since the time period relevant to this case, the FLSA has been amended to exclude companions employed by third-party employers from its overtime exemption. *See also Jordan*, 950 F.3d at 727 n.2.

exemptions for individuals performing work that is classified as companion care. Colorado law is intended to mimic federal law . . . ."); *see also Jordan*, 950 F.3d at 729 (discussing these enforcement letters).

Bayada and Ms. Kennett raise a variety of arguments about what level of formal deference we should give, if any, to the Division's interpretation of the companionship exemption. We decline to address this issue. As we held in *Jordan*, "[w]e need not decide whether any deference attaches to the Division's interpretation because under Colorado law, it is undisputed that we may treat the Division's interpretation[s] of its Wage Order as persuasive authority"—if those interpretations have the power to persuade. 950 F.3d at 751–52 (footnote omitted); *see also Banner Advert., Inc. v. City of Boulder*, 868 P.2d 1077, 1083 (Colo. 1994) ("While opinion letters from administrative agencies are not binding authority, they can be used as persuasive authority."). And in *Jordan*, we in fact "f[ound] the Division's interpretation persuasive." 950 F.3d at 752; *see id.* (noting that the Division's "unbroken, oft-expressed position [was] potent evidence that it intended the companionship exemption to apply to companions employed by third-party employers"); *see also id.* at 732 ("The primary goal of interpretation is to 'give effect to the intent of the enacting body.'" (quoting *Richter*, 796 F.3d at 1185)). *Jordan*'s view of the Division's interpretation is controlling here.

16

Ms. Kennett offers several arguments for why the Division's interpretation of the companionship exemption is unpersuasive. *See* Aplee.'s Resp. Br. at 27–37. These arguments are unavailing in light of *Jordan*. First, Ms. Kennett argues that the Division's interpretation is unpersuasive because it conflicts with the plain language of the Wage Order. *See* Aplee.'s Resp. Br. at 29; *cf. Rags Over the Ark. River, Inc. v. Colo. Parks & Wildlife Bd.*, 360 P.3d 186, 192 (Colo. App. 2015) ("[W]hile an agency's reasonable interpretation of its own regulations is ordinarily entitled to deference, an interpretation that is inconsistent with the plain language of the regulation is not." (citations omitted)). But, as we discussed *supra*, the companionship exemption is ambiguous and could reasonably be interpreted as covering companions employed by third-party employers. In other words, the Division's interpretation does not conflict with the language of the Wage Order because it embraces one plausible interpretation of that language.

Second, Ms. Kennett argues that the opinion letter is unpersuasive because it lacks a reasoned analysis. *See* Aplee.'s Resp. Br. at 35–37; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that the weight afforded to an agency opinion letter "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, . . . and all those factors which give it power to persuade"). But we held in *Jordan* that the opinion letter contains sufficient analysis to persuade. *See* 950 F.3d at 753 ("[The 2006 opinion letter] read[s] like a syllogism: the Division intended the companionship exemption to

17

mirror federal law; federal law expressly included companions employed by third-party employers within its exemption; therefore, the companionship exemption applies to companions employed by third-party employers. We are thus constrained to disagree with the district court's assessment that the letter[] contained 'no analysis' and 'no reasoning.'").

Ms. Kennett also argues that the opinion letter's typos and numerous qualifiers undermine its authority. *See* Aplee.'s Resp. Br. at 36–37; *see also* Aplt.'s App., Vol. I, at 139a ("This position of the Division is based upon the case-specific information provided, and does not necessarily generalize to other contexts or situations. . . . The position of the Division may also change over time. This position is not legal advice, and the opinion of attorneys and the judicial system may differ."). However, we concluded in *Jordan* that these disclaimers simply "clarify that the opinion letter[] [is] informal and nonbinding." 950 F.3d at 754. "But even informal and nonbinding letters 'can be used as persuasive authority.'" *Id.* (quoting *Banner Advert., Inc.*, 868 P.2d at 1083). Moreover, Ms. Kennett does not cite to any authority to show that a single typo (she fails to specifically identify more than one) will render an agency opinion letter unpersuasive.

Additionally, Ms. Kennett questions the opinion letter's persuasive power because it contends that the companionship exemption is intended to mirror the FLSA, yet ignores other, significant differences between the FLSA and the Wage

18

Order. Aplee.'s Resp. Br. at 31–35. But the Division never claimed that the Wage Order mirrors the FLSA—more specifically, its applicable regulations—in every respect. Rather, it merely stated that the *companionship exemption* was intended to mirror the FLSA and its applicable regulations. Thus, no extra analysis was necessary on the Division's part to explain the differences between *other* portions of the Wage Order and these sources of federal law.

Finally, Ms. Kennett argues that the Division's opinion letter "is also problematic in light of the new federal regulations." *Id.* at 37. Specifically, she reasons that the Division's contention, in the 2006 opinion letter, that the companionship exemption is intended to mirror the FLSA—in particular, the FLSA regulations—"loses all credibility," when one considers that in 2015 the FLSA regulations were changed to exclude third-party employers from the companionship exemption, but Colorado's Wage Order "stayed the same." *Id.* at 37–38. However, the most straightforward and determinative response to Ms. Kennett's line of reasoning is the one that Bayada offers. It points out, "[b]ecause the prior version of the FLSA [and its regulations] w[ere] in effect during the relevant time period at issue in this case, including at the time the Division drafted the 'companion[ship]' exemption and various interpretative aids, the recent changes [i.e., to the FLSA regulations] are simply not at issue for purposes of this appeal." Aplt.'s Reply Br. at 14 n.6. In other words, during the period material and relevant to this case, the pre-2015 FLSA regulations were in

19

effect, and that was the version of federal law that the Division used as a critical touchstone in crafting the companionship exemption, which is controlling here, and the Division's related guidance materials. That the federal government later changed its regulations in 2015 could not retrospectively alter the operative touchstone that the Division used prior to that time—i.e., the touchstone of the pre-2015 FLSA regulations—and *that* is the touchstone that is material and relevant to this appeal.

Moreover, though the Division explicitly referenced its longstanding intention in the 2006 opinion letter that the scope of the companionship exemption mirror federal law, it did not indicate that this regulatory position was somehow immutable, nor that the Division was somehow obliged to march in lockstep with the federal government's view of the companionship-exemption's scope. *Cf.* Aplt.'s App., Vol. I, at 138a (noting, without suggesting that change was *not* possible, that the Division's "position" that the Wage Order was "intended to [] mirror . . . federal law . . . has remained unchanged . . . since . . . 1998"). Therefore, as a matter of logic, it would not signify any lack of credibility in the position that the Division took in its 2006 opinion letter for the Division subsequently to persist in *its* understanding of the companionship-exemption's scope—as including third-party employers—even though the federal government elected to alter its position concerning this question in the 2015 FLSA regulations.

20

In sum, controlled by our analysis in *Jordan*, we determine that the Division's "unbroken, oft-expressed position is potent evidence that it intended the companionship exemption to apply to companions employed by third-party employers," 950 F.3d at 752, and Ms. Kennett's arguments do nothing to undermine our determination on this matter.

**2**

In concluding our analysis, we note that, in a second 28(j) letter on the eve of oral argument, Ms. Kennett informed us that the Division has issued a Public Rulemaking Notice in which it stated that the current exemption for companions "reach[es] only those employed directly 'by households or family members to perform duties in private residences.'" Aplee.'s Second 28(j) Letter, Ex. C, at 23 (filed on Nov. 18, 2019). In other words, the Division signaled that it planned for its interpretation of the companionship exemption to mirror the 2015 amendment to the FLSA regulations.

In her 28(j) letter, Ms. Kennett argues that the Division's new interpretation "confirm[s] the district court's reading of the regulation, namely, that the companion[ship] exemption does not apply to third-party employers like [Bayada]." *Id.* at 2. In another 28(j) letter, she also argues that the Division's June 24, 2019, notice rescinding all Division-drafted opinion letters "support[s] [her] position (and the district court's conclusion) that the [Division's 2006]

21

Opinion Letter . . . [is] not entitled to deference." Aplee.'s First 28(j) Letter at 2 (filed July 3, 2019). We disagree on both counts.

Notably, these 28(j) letters alert the court to actions the Division has taken long after the time period that forms the basis for Ms. Kennett's lawsuit. Yet, Ms. Kennett has neither cited to any authority showing that the Division's actions have retroactive effect nor even made such an argument. *Cf. De Niz Robles v. Lynch*, 803 F.3d 1165, 1169–71 (10th Cir. 2015) (discussing the presumption against retroactive application of laws in the agency context); *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 11–12 (Colo. 1993) (noting Colorado's statutory and common law presumption favoring the prospective application of statutes); *Colo. Office of Consumer Counsel v. Pub. Serv. Co. of Colo.*, 877 P.2d 867, 870–72 (Colo. 1994) (holding that a certain regulation violated the Colorado Constitution's prohibition against retrospective legislation). More to the point, Ms. Kennett has not carried her burden of explaining at any point—either in her supplemental authority or in her subsequent (unsuccessful) motion to certify, filed after we issued our *Jordan* decision—why the Division's recent actions should affect our resolution of this case or, more specifically, cause us to deviate from *Jordan*'s reasoning.

Therefore, we have no need to opine here—and thus do not—on the import of the aforementioned recent actions of the Division. Suffice to say that Ms.

Kennett has not given us any basis for departing from our reasoning in *Jordan*, and that reasoning dooms her effort to defend the district court's judgment.[5]

**IV**

In sum, we hold, pursuant to *Jordan*, that the companionship exemption in effect during the time period relevant to this lawsuit covered companions employed by third-party employers, like Bayada. As a result, Ms. Kennett and her fellow class members are not entitled to overtime wages under Colorado law.

---

[5] We recognize that the Division not only signaled through its notice of proposed rulemaking that it planned to exclude companions who work for third-party employers, like Bayada, from the coverage of the companionship exemption, but—as alluded to above, *see supra* note 2—in 2020 it actually completely removed the companionship-exemption language at issue here from the applicable regulation. For similar reasons to those stated in text *supra*, based on the arguments before us, we have no basis to conclude that there is anything about this recent development that should cause us to depart from *Jordan*'s reasoning in resolving this specific dispute.

We thus **REVERSE** the district court's judgment and **REMAND** the case for

further proceedings consistent with this order and judgment.[6]

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge

---

[6]    On May 9, 2019, *amicus curiae* Towards Justice filed a motion for leave to file an amicus brief; Bayada opposed the motion. The motion was "provisionally granted, subject to reconsideration by the panel of judges that will be assigned later to consider this appeal on the merits." *See* Order, No. 19-1004, at 1, (10th Cir., filed May 21, 2019). Having carefully considered the matter, we **deny** Towards Justice's motion.

*Michele Kennett v. Bayada Home Health Care, Inc.*, No. 19-1004, Bacharach, J., concurring.

I agree with the majority that *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724 (10th Cir. 2020) controls,[1] so I concur in the judgment. But if we were interpreting the minimum wage order on a blank slate, I would have adopted Ms. Kennett's interpretation of the minimum wage order.

The minimum wage order contains an exemption referring to three jobs:

1.   Companions,

2.   Casual babysitters, and

3.   Domestic employees.

7 Colo. Code Regs. § 1103–1:5 (2019).

---

[1]   In *Jordan*, the Court addressed three arguments that Bayada has not made here:

1.   Dictionaries and federal wage laws can shed insight on the definitions of *companions*, *casual babysitters*, and *domestic employees*.

2.   The minimum wage order's enabling statute could conflict with the household modifier if we were to treat the household modifier as applicable to *companions*.

3.   The household modifier should not apply to c*ompanions* or c*asual babysitters*; otherwise, those terms would be subsumed by the term *domestic employees*.

950 F.3d at 735–44. I express no opinion on these arguments.

The parties agree that the last exempt job (*domestic employees*) is narrowed by a restrictive clause: *employed by households or families to perform duties in private residences*. 7 Colo. Code Regs. § 1103–1:5. The primary issue is whether this restrictive clause also applies to the other two jobs (*companions* and *casual babysitters*). Our opinion in *Jordan* answers "no." *Jordan*, 950 F.3d at 754. In my view, however, textual and interpretive clues support application of the restrictive clause to all three jobs.

Like the majority, I regard the minimum wage order as ambiguous. *Id.* at 739. Despite this ambiguity, we must decide the better interpretation. Ms. Kennett's interpretation is supported by the grammatical structure of the minimum wage order and the series–qualifier canon. The agency's contrary interpretations are nullities and unpersuasive.

**1.     The text of the minimum wage order suggests that *companions* are exempt only when employed by households or families.**

To interpret the minimum wage order, the parties agree that the starting point is the text. In reviewing the text, we consider not only the words but also their grammatical structure. *See* Earl T. Crawford, *The Construction of Statutes* § 196, at 337 (1940) ("Since one may assume that the legislature knew and understood the rules of grammar, such rules should be considered by the courts in their efforts to ascertain the meaning of a statutory enactment . . . .").

2

The minimum wage order contains three groupings of exemptions. The second grouping exempts

> *companions, casual babysitters, and* domestic employees employed by households or family members to perform duties in private residences, property managers, interstate drivers, driver helpers, loaders or mechanics of motor carriers, taxi cab drivers, *and* bona fide volunteers.

7 Colo. Code Regs. § 1103–1:5 (emphasis added). We must interpret the references to *companions* and *casual babysitters*. Bayada interprets these references to include every companion and casual babysitter; Ms. Kennett would limit these references to individuals "employed by households or family members to perform duties in private residences." *Id.*

Bayada's interpretation would translate into this list of nine jobs:

1.    companions,

2.    casual babysitters,

      *and*

3.    domestic employees employed by households or family members to perform duties in private residences,

4.    property managers,

5.    interstate drivers,

6.    driver helpers,

7.    loaders or mechanics of motor carriers,

8.    taxi cab drivers,

      *and*

3

9.  bona fide volunteers.

Ms. Kennett's interpretation would include these seven jobs:

1.  companions, casual babysitters, and domestic employees employed by households or family members to perform duties in private residences,

2.  property managers,

3.  interstate drivers,

4.  driver helpers,

5.  loaders or mechanics of motor carriers,

6.  taxi cab drivers,

    *and*

7.  bona fide volunteers.

The primary difference is that with Bayada's interpretation, the first *and* is inserted into the middle of the series. Insertion of the *and* would be superfluous, which counsels against Bayada's interpretation. *See People v. Cross*, 127 P.3d 71, 73 (Colo. 2006) ("We . . . reject interpretations [of a statute] that render words or phrases superfluous . . . ."); *Denver Publ'g. Co. v. Bd. of Cty. Comm'rs of Arapahoe Cty.*, 121 P.3d 190, 195 (Colo. 2005) ("We interpret every word [of a statute], rendering none superfluous . . . .") (quoting *Sooper Credit Union v. Sholar Grp. Architects, P.C.,* 113 P.3d 768, 771 (Colo. 2005)).

We addressed a similar issue in *Cruz v. United States*, 106 F.2d 828 (10th Cir. 1939). There we interpreted a statutory series based on the

4

superfluity of the conjunction *or.* The statute criminalized deprivations of benefits "by means of any fraud, force, threat, intimidation, *or* boycott, *or* discrimination on account of race, religion, *or* political affiliations . . . ." *Id.* at 829 (emphasis added). The defendants argued that the restrictive clause (*on account of race, religion, or political affiliations*) referred to all six of the nouns (*fraud, force, threat, intimidation, or boycott, or discrimination*). *Id.*

The Court rejected this interpretation because the defendants' interpretation would have injected a superfluous conjunction (*or*) into the series:

1.    fraud,

2.    force,

3.    threat,

4.    intimidation,

    *or*

5.    boycott,

    *or*

6.    discrimination

on account of race, religion, *or* political affiliations. *See id.* To avoid making the first *or* superfluous, the Court concluded that two categories existed:

5

> 1. A deprivation of benefits by means of fraud, force, threat, intimidation, or boycott
>
> 2. A deprivation of benefits by means of discrimination on account of race, religion, or political affiliations

*Id.* at 829–30. The legislature "clearly indicated" its intent by inserting the first *or* between *intimidation* and *boycott*. *Id.* at 830.

The same is true here. In our case, we're dealing with a different conjunction (*and* instead of *or*). But like the defendants in *Cruz*, Bayada is embracing an interpretation that inserts a superfluous conjunction into the middle of the series. In Ms. Kennett's interpretation, the conjunction (*and*) is not superfluous. It joins the three related jobs (*companions*, *casual babysitters*, *and domestic employees*), so the modifying restrictive clause (*employed by households or family members to perform duties in private residences*) applies to each of the three jobs.

Bayada points to the other two groupings of exemptions in the minimum wage order, suggesting that they also include superfluous *and*s. I disagree.

The first grouping contains a list of jobs: "administrative, executive/supervisor, professional, outside sales employees, *and* elected officials *and* members of their staff." 7 Colo. Code Regs. § 1103–1:5 (emphasis added). Bayada argues that one of the two *and*s must be superfluous. I disagree. The first *and* shows that the whole list is

6

conjunctive, including five jobs; the second *and* shows that the fifth job includes staff members for elected officials. So the list reads:

1.    administrative,

2.    executive/supervisor,

3.    professional,

4.    outside sales employees,

     *and*

5.    elected officials *and* members of their staff.

*See id.* Neither *and* is superfluous in this grouping of five jobs.

Nor is there a superfluous *and* in the final grouping of exempt jobs:

> Also exempt are: students employed by sororities, fraternities, college clubs, or dormitories, *and* students employed in a work experience study program *and* employees working in laundries of charitable institutions which pay no wages to workers *and* inmates, or patient workers who work in institutional laundries.

*Id.* (emphasis added).

The grouping is conjunctive, listing a series of jobs that are exempt. But within the series, some of the items contain internal punctuation. For example, the list includes "students employed by sororities, fraternities, college clubs, *or* dormitories." *Id.* (emphasis added). The *or* signifies that students are exempt if they are employed by a sorority, fraternity, college club, or dormitory. *Id.* The list also includes three other items: one of these contains internal punctuation and two don't. To show that all of these

7

employees are exempt, the final grouping must include at least one *and*. But here the conjunction *and* appears three times.

We typically use only one conjunction to refer to multiple items in a list. But when some of the items contain internal punctuation, the list can create confusion. To avoid confusion, we can either use semicolons or insert an *and* between each item in the list. *See Chicago Manual of Style* 6.18–6.19 at 312–13, 6.58 at 326 (16th ed. 2010) (discussing the serial comma followed by *and*, and stating that semicolons can be used to aid clarity when the series contains internal punctuation).

In this grouping of jobs, Ms. Kennett argues, the drafters chose the second method. They inserted an *and* between each category to clarify the existence of four separate categories of jobs (with some of these categories containing internal series separated by the conjunction *or*). So Ms. Kennett regards this grouping as a list of four categories of employees:

1. students employed by sororities, fraternities, college clubs, *or* dormitories,

   *and*

2. students employed in a work experience study program

   *and*

3. employees working in laundries of charitable institutions which pay no wages to workers

   *and*

8

4.       inmates, *or* patient workers who work in institutional laundries.

*See* 7 Colo. Code Regs. § 1103–1:5. Without the three *and*s, the sentence would be incomprehensible because of the two internal *or*s.

Bayada, on the other hand, would connect the job categories this way:

1.       students employed by sororities, fraternities, college clubs, or dormitories,

       *and*

2.       students employed in a work experience study program

       *and*

3.       employees working in laundries of charitable institutions which pay no wages to workers and inmates,

       *or*

4.       patient workers who work in institutional laundries.

*See id.*; Appellant's Reply Br. at 5. This interpretation inexplicably switches from *and* (to separate the first three jobs) to *or* (to separate only the final job).

In any event, Bayada's interpretation would supply a function for each *and* in the final grouping. So even under Bayada's interpretation, there is no superfluous *and* in the final grouping.

\* \* \*

9

Ms. Kennett's interpretation is supported by (1) the principles of grammar and (2) the need to avoid superfluity and inconsistency. The text itself indicates that the restrictive clause refers equally to *companions*, *casual babysitters*, and *domestic workers*.

**2.    Canons of interpretation also suggest that *companions* are exempt only when employed by households or families.**

In interpreting the minimum wage order, the parties also rely on canons of interpretation. Though the issue here involves interpretation of an administrative order rather than a statute, Colorado courts apply the same rules when interpreting administrative orders and statutes. *See Ferraro v. Frias Drywall, LLC*, 451 P.3d 1255, 1260 (Colo. App. 2019).

Two conflicting canons could affect the meaning of restrictive modifiers that follow the last noun in a series: (1) the series–qualifier canon and (2) the last–antecedent rule. Ms. Kennett embraces the series–qualifier canon, and Bayada embraces the last–antecedent rule.

Both canons apply to a series containing multiple parallel nouns. Under the series–qualifier canon, the restrictive modifier ordinarily applies to each of the nouns. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). Under the last–antecedent rule, the restrictive clause modifies "only the noun . . . that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). So the two canons, when applied to the same set of words, lead to two different conclusions.

10

**A.     The last–antecedent rule is not used in Colorado.**

The two canons are treated differently in Colorado. The Colorado legislature has expressly repudiated the last–antecedent rule. *See* Colo. Rev. Stat. Ann. § 2–4–214 ("The general assembly hereby finds and declares that" the last–antecedent rule "has not been adopted by the general assembly and does not create any presumption of statutory intent."); *see also People v. Rieger*, 436 P.3d 610, 612 n.3 (Colo. App. 2019) (stating that the last–antecedent rule "was legislatively repudiated in 1981"). Given this statute, the Colorado Supreme Court has stated that the last–antecedent rule "is no longer applicable in Colorado." *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1113 n.6 (Colo. 1990).

Bayada argues that the last–antecedent canon remains applicable in Colorado, referring to four opinions: *People v. Weeks*, 369 P.3d 699 (Colo. App. 2015); *People ex. rel. O.C.*, 312 P.3d 226 (Colo. App. 2012); *People v. Trujillo*, 251 P.3d 477 (Colo. App. 2010); and *Chandler-McPhail v. Duffey*, 194 P.3d 434 (Colo. App. 2008). But none support the viability of the last–antecedent rule to interpret statutes or administrative orders.

In *Weeks* and *O.C.*, the court relied on legislative and legal history as grounds for the decisions because the legislature had repudiated the last–antecedent rule. *Weeks*, 369 P.3d at 711–12; *O.C.*, 312 P.3d at 230–31. In *Trujillo*, the court stated that the statutory repudiation of the last–antecedent rule "does not create a contrary presumption" favoring the

11

series–qualifier canon. 251 P.3d at 480. The *Trujillo* court did not apply the last–antecedent rule or suggest that it continued as a valid interpretive tool in Colorado. *Trujillo* instead relied on legislative history and the need to avoid statutory conflict. *Id.* at 480–81. And *Chandler-McPhail* involved interpretation of a contract, not a statute or administrative order. 194 P.3d at 437, 440–42.

Bayada also offers numerous examples of opinions in other jurisdictions applying the last–antecedent canon. None involve the interpretation of Colorado law.

**B.**    **Precedent and context support using the series–qualifier canon here.**

Though Colorado appellate courts have declined to apply the last–antecedent rule, they have routinely applied the series–qualifier canon. *E.g.*, *In re Estate of David v. Snelson*, 776 P.2d 813, 818 (Colo. 1989) (noting that the General Assembly had "expressly repudiated" the last–antecedent rule and choosing instead to apply the series–qualifier canon); *People v. Lovato*, 357 P.3d 212, 221 (Colo. App. 2014) (applying the series–qualifier canon).

The majority posits that under Colorado law, a canon of construction "is merely an interpretive aid, not an absolute rule" and its application depends on "context." *See Benefield v. Colo. Republican Party*, 329 P.3d 262, 267 (Colo. 2014). I agree. For the series–qualifier canon, the context

12

turns on whether the modifying clause would sensibly modify each preceding noun. The Supreme Court recently illustrated a contextual clue triggering the series–qualifier canon, using a classic example: "the laws, the treaties, and the constitution of the United States":

> A reader intuitively applies "of the United States" to "the laws," "the treaties" and "the constitution" because (among other things) laws, treaties, and the constitution are often cited together, because readers are used to seeing "of the United States" modify each of them, and because the listed items are simple and parallel without unexpected internal modifiers or structure.

*Lockhart v. United States*, 136 S. Ct. 958, 963 (2016).

The same is true here. The parallel series (*companions*, *casual babysitters*, *and domestic employees*) contains three categories of caretaker jobs. Caretakers in each category can be employed by families or households to work in a home. So all three nouns (*companions*, *casual babysitters*, *and domestic employees*) can be restricted through the modifying clause that follows the series: "employed by households or family members to perform duties in private residences." 7 Colo. Code Regs. § 1103–1:5. Given the applicability of the modifying clause to each noun, the series–qualifier canon would attach the restrictive modifier to each of the three nouns, applying the exemption to

- *companions* employed by households or family members to perform duties in private residences,

- *casual babysitters* employed by households or family members to perform duties in private residences, and

13

- *domestic employees* employed by households or family members to perform duties in private residences.

*See id.*

Under the series–qualifier canon, companions hired by a third–party employer (like Bayada) would not fall within the exemption.

## 3. The agency's interpretations were unpersuasive and are now rescinded.

Bayada also relies on an advisory bulletin and opinion letter. These documents were unpersuasive and conflicted with each other, and the agency ultimately rescinded both documents. So we should not base our decision on these documents.

### A. Both the advisory bulletin and the opinion letter are nullities.

Bayada argues that the agency's 2012 advisory bulletin shows the drafter's intent underlying the minimum wage order. The advisory bulletin states that companions and casual babysitters are exempt. Appellant's App'x vol. 1, at 158a. Given this statement, Bayada contends that the advisory bulletin exempts all companions irrespective of whether they were employed by a family or household.

But in 2019, the agency stated that the advisory bulletin "is no longer operative as reflecting Division opinions, interpretations, or rulings." Notice Regarding Opinion/Exemption Letters at 2 (June 24, 2019). Bayada argues that this language operates prospectively, allowing the advisory

14

bulletin to continue supplying retroactive guidance for past minimum wage orders. I disagree. The agency stated that the advisory bulletin had "properly noted that it was . . . not 'legal advice,' 'and should not be relied upon as an official record of action or law.'" *Id.* This statement does not permit continued use of past advisory bulletins for any purpose. *See MGPC, Inc. v. Dep't of Energy*, 763 F.2d 422, 431 (Temp. Emer. Ct. App. 1985) (interpreting rescission of an order as a nullity prohibiting any effect even in the past).

Bayada also relies on a 2006 opinion letter from the agency, supporting its position on the *companion* exemption. The letter

- stated that the agency intended the *companion* exemption to "mirror" federal law, which then exempted companions with third-party employers (*see* 29 C.F.R. § 552.109(a) (2006)), and

- approved "the practice of applying the companionship exemption in situations involving third party employers."

Appellant's App'x vol. 1, at 138a–39a. But in 2019, the agency stated that its previous opinion letters "were never binding" and "are now rescinded." Notice Regarding Opinion/Exemption Letters at 1 (June 24, 2019).

Despite the language in the notice, Bayada urges continued application of the 2006 opinion. I disagree. The agency stated that

- opinion letters had been issued ex parte, with input from only one party,

- the opinion letters "were not binding determinations with legal effect," and

15

- "all such letters are now rescinded."

Notice Regarding Opinion/Exemption Letters at 1 (June 24, 2019). The agency made clear that its opinion letters were never binding because they had been issued ex parte and lacked any legal effect. Because the 2006 opinion letter has been rescinded, it is also a nullity.

**B.   When the advisory bulletin and opinion letter were in effect, they were meaningful only to the extent that they were persuasive.**

Colorado law normally affords great deference to an agency's reasonable interpretation of its ambiguous order. *Sierra Club v. Billingsley*, 166 P.3d 309, 312 (Colo. App. 2007); *see also Citizens for Clean Air & Water v. Colo. Dep't of Pub. Health & Env't*, 181 P.3d 393, 396–97 (Colo. App. 2008) ("An agency's interpretation of its own regulations . . . is entitled to deference and must be accepted if there is a reasonable basis in the law."). But Colorado law, like federal law, recognizes that an interpretation in the form of an advisory bulletin or opinion letter lacks the force of law, so it is "'entitled to respect,' but only to the extent that [the interpretation has] the 'power to persuade.'" *Brunson v. Colo. Cab Co., LLC*, 433 P.3d 93, 96 (Colo. App. 2018) (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)). The persuasiveness of an agency interpretation "is derived in part from the 'thoroughness evident in its consideration' and from its reflection of a

16

body of experience and informed judgment." *Brunson*, 433 P.3d at 99 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

**C.  The 2012 advisory bulletin was unpersuasive when it was in effect.**

Even before rescission of the advisory bulletin, it was unpersuasive. The advisory bulletin discussed *companions* and *casual babysitters* but did not define *domestic employees* as exempt or non-exempt. Without defining *domestic employees* as a comparator, a court could not fairly infer whether the bulletin referred to companions and babysitters when employed by third parties.

The agency's interpretation in the advisory bulletin also conflicted with a 2006 opinion letter defining *companion*s and *companionship services*. For example, the opinion letter stated that *companions* spent no more than 20% of their weekly workloads on general household work. Appellant's App'x vol. 1, at 138a. By contrast, the advisory bulletin described *companionship services* without mentioning any such limitation on general household work. Appellant's App'x vol. 1, at 158a. This inconsistency undercut the persuasive value of both the advisory bulletin and the opinion letter. *See Brunson*, 433 P.3d at 99 ("[T]o be persuasive, an agency interpretation must be consistent and contemporaneous with other pronouncements of the agency . . . .").

17

**D.** **The 2006 opinion letter was unpersuasive when it was in effect.**

Even if the 2006 opinion letter were not a nullity, it would also be unpersuasive. The opinion letter not only conflicted with the advisory bulletin but also displayed a lack of thoroughness. The opinion letter didn't address the language of the minimum wage order, canons of interpretation, case law, or regulatory history. Instead, the opinion letter relied solely on an assertion that the *companion* exemption "mirror[ed]" federal law. But it's impossible to read the *companion* exemption as a mirror image of contemporaneous federal law.

In 2006, federal law provided that

- companions employed by a family or household were not exempt and

- companions employed by a third party were exempt.[2]

*See* 29 C.F.R. § 552.109(a) (2006). But the minimum wage order cannot be read this way. There were only two reasonable interpretations:

1. All companions are exempt (Bayada's interpretation).

2. Only companions employed by households or families are exempt (Ms. Kennett's interpretation).

7 C.C.R. § 1103–1:5 ("Other exemptions are: companions, casual babysitters, and domestic employees *employed by households or family*

---

[2]    Federal law changed in early 2015. *Compare* 29 C.F.R. § 552.109 (2014), *with* 29 C.F.R. § 552.109 (2015).

*members* to perform duties in private residences . . . . (emphasis added)). It is impossible to read the minimum wage order as limiting the *companion* exemption to companions employed by third parties. So the minimum wage order did not "mirror" federal law.[3]

The opinion letter supplied no other basis for its conclusion, and the reasoning would be wrong even under Bayada's interpretation of the minimum wage order. So even if the opinion letter hadn't been rescinded, it would have lacked persuasive value.

## 4.    Conclusion

Based on the arguments in this case, I would have avoided superfluous language, applied the series–qualifier canon, and declined to defer to the agency's obsolete and unpersuasive interpretation of the minimum wage order. To avoid superfluous language and apply a viable canon of interpretation, Ms. Kennett properly restricts the exemption for companions to those "employed by households or family members to perform duties in private residences." 7 Colo. Code Regs. § 1103–1:5. But *Jordan* controls, so I join my colleagues in the disposition.

---

[3]     Bayada and the majority also rely on various enforcement letters, which similarly state that the companion exemption was intended to "mirror" or "mimic" federal law. *See* Appellants' App'x vol. 3, at 584a, 588a. These enforcement letters share the conclusory, unpersuasive reasoning of the 2006 opinion letter.

19