2014 CO 57

Debbie BENEFIELD, State Representative; Bernie Buescher, State Representative; Morgan Carroll, State Representative; Gwyn Green, State Representative; Mary Hodge, State Representative; Liane "Buffie" McFadyen, State Representative; Wes McKinley, State Representative; Michael Merrifield, State Representative; James Riesberg, State Representative; and Judy Solano, State Representative, Petitioners

v.

COLORADO REPUBLICAN PARTY, Respondent.

Supreme Court Case No. 11SC935

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioners: Holland & Hart LLP, Maureen R. Witt, Greenwood Village, Colorado, Holland & Hart LLP, Stephen G. Masciocchi, Jonathan S. Bender, Denver, Colorado.

Attorneys for Respondent: Jackson Kelly, PLLC, John S. Zakhem, John L. Skari, Jr., Denver, Colorado, Brett R. Lilly, LLC, Brett R. Lilly, Wheat Ridge, Colorado.

Attorneys for Amicus Curiae The State of Colorado: John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Frederick R. Yarger, Assistant Solicitor General, Erin A. Overturf, Assistant Solicitor General, Stephanie Scoville, Senior Assistant Attorney General, Denver, Colorado.

Attorney for Amici Curiae The Colorado Municipal League, Colorado Counties, Incorporated, The Special District Association of Colorado, and The Colorado Association of School Boards: Hayes, Phillips, Hoffmann & Carberry, P.C., Corey Y. Hoffmann, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Common Cause: David J. Janik, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Ethics Watch: Colorado Ethics Watch, Luis Toro, Margaret Perl, Denver, Colorado.

Attorneys for Amicus Curiae The Colorado Press Association: Levine Sullivan Koch & Schulz, LLP, Thomas B. Kelley, Steven D. Zansberg, Ashley I. Kissinger, Denver, Colorado.

Attorneys for Amicus Curiae The Independence Institute: Jackson Kelly PLLC, Shayne M. Madsen, Heather A. Joyce, Denver, Colorado.

JUSTICE COATS delivered the Opinion of the Court.

¶ 1 Benefield and other current or former members of the House of Representatives sought review of the court of appeals' judgment in *Colorado Republican Party v. Benefield,* —— P.3d —— (Colo.App. No. 10CA2327, Nov. 10, 2011), which reversed the district court's order denying costs and attorney fees for the Colorado Republican Party. After assessing the extent to which the Party prevailed overall in its action for inspection of public records, the district court determined that it was not a "prevailing applicant" within the meaning of section 24–72–204(5), C.R.S. (2013). The court of appeals reversed, reasoning that a "prevailing applicant" was "any party who brings a section 24–72–204(5) action against a public records custodian and obtains any improperly withheld public record as a result of such action."

¶ 2 Because section 24–72–204(5), when properly construed, mandates an award of costs and reasonable attorney fees in favor of any person who applies for and receives an order from the district court requiring a custodian to permit inspection of a public record, as provided for by the statute, the judgment of the court of appeals is affirmed.

I.

¶ 3 In 2006, the Colorado Republican Party submitted a Colorado Open Records Act request to each of the Petitioners, a group of current and former members of the Colorado House of Representatives. The request sought access to responses to a 2005 survey that solicited the viewpoints of various constituents of the Representatives on a range of legal, political, and social issues. When the Representatives declined to make available any of the 1,584 requested survey responses, the Party applied to the district court of Denver for an order mandating disclosure of the records, as authorized by section 24–72–204(5), C.R.S. (2013). After several years of litigation, as was more fully detailed by the court of appeals below, the Party had succeeded in acquiring access to 925 of the 1,584 surveys it originally requested, by virtue of either court order or reconsideration by the custodian after proceedings

had begun. The district court ultimately determined that the remaining 659 surveys were not subject to inspection pursuant to the Act.

¶ 4 The Party then moved for costs and attorney fees, as expressly provided for a "prevailing applicant" by section 24–72–204(5). The district court denied the motion, reasoning that the statutory mandate for an award of costs and reasonable attorney fees in favor of a "prevailing applicant" contemplated only an applicant who, in the discretion of the court, prevailed in the litigation as a whole. Reasoning further that the Representatives' initial denial of inspection was, in many respects, proper and was generally vindicated by subsequent trial and appellate proceedings, the district court concluded that there was no "prevailing party" in the litigation, and therefore the applicant-Republican Party was not a "prevailing applicant" within the contemplation of the Act.

¶ 5 On direct appeal by the Party, the court of appeals reversed. In contradistinction to the reasoning of the district court, the appellate court construed the word "prevailing," modifying "applicant" in section 24–72–204(5), to describe any applicant who succeeds in acquiring, as the result of filing an application with the district court, access to a record as to which inspection had previously been denied by the custodian. Because the Party succeeded, after filing its action, in obtaining the right to inspect public records, access to which had previously been denied by the Representatives, the court of appeals concluded that the Party was entitled as a matter of right to an award of costs and attorney fees.

¶ 6 The Representatives petitioned for a writ of certiorari, renewing with this court the proper construction of the term "prevailing applicant," as that term appears in section 24–72–204(5).

## II.

¶ 7 In Colorado, the legislature has declared a policy in favor of access to public records. § 24–72–201, C.R.S. (2013). To that end, the Colorado Open Records Act, §§ 24–72–200.1 to –206, C.R.S. (2013), requires cus-todians of public records to permit any person the right to inspect any public record, except as otherwise provided by law. In the event a custodian denies access to a public record, the Act provides the applicant seeking that record with a right to apply to the district court of the district in which the record is located for an order directing the custodian to show cause why inspection should not be permitted. *See* § 24–72–204(5). By requiring preliminary notice to the custodian of any intent to make application to the district court and by imposing non-reciprocal costs and fees provisions favoring the applicant, however, the statute is clearly structured to provide disincentives to forcing an applicant to vindicate his right of inspection by filing with the district court and encouragement for resolution of the matter otherwise. *See id.*

¶ 8 More particularly, the statutory scheme entitles an applicant denied access to a public record to demand a written statement of the custodian's grounds for denial, § 24–72–204(4), and, in any event, obligates the applicant to file written notice with the custodian at least three business days prior to filing an application with the district court, § 24–72–204(5). In addition to providing the custodian an opportunity to reconsider his denial, with an awareness that his initial decision will be challenged in court, the statute provides the custodian, if he either believes that "disclosure ... would do substantial injury to the public interest" or is "unable, in good faith, after exercising reasonable diligence, and after reasonable inquiry, to determine if disclosure of the public record is prohibited," with a vehicle to himself apply to the district court for a determination whether disclosure is prohibited. § 24–72–204(6)(a). In the event the official custodian proves and the court finds that he, in good faith, after exercising reasonable diligence and after making reasonable inquiry, was unable to determine if disclosure of the record was prohibited without a ruling by the court, the attorney fees provisions governing application to the district court by persons denied inspection "shall not apply." *See id.*

¶ 9 Should it become necessary for anyone to apply to the district court for access to a public record, subsection (5) of section 204 includes unique, non-reciprocal provisions concerning the recovery of fees and costs favoring the applicant in this limited class of proceedings. The scheme makes clear that no costs or attorney fees shall be awarded to a person applying to the district court for access if the records being sought would be discoverable according to the civil rules in pending litigation filed by that person against a state or local public body. § 24–72–204(5). Otherwise, with the possible exception of access sought for records of executive session meetings, which involves a separate burden for the applicant, *see* § 24–72–204(5.5), unless the district court finds proper the custodian's denial of the right of inspection, the court is required to both order the custodian to permit inspection and award court costs and reasonable attorney fees to the prevailing applicant, § 24–72–204(5). By contrast, the only provision concerning costs and fees in favor of the custodian requires the court to award costs and reasonable attorney fees to the custodian only if the court finds both that the denial of inspection was proper and that the action was frivolous, vexatious, or groundless. § 24–72–204(5).

¶ 10 The language of section 24–72–204(5) at issue here originated from House Bill 01–1359, 2001 Colo. Sess. Laws 1069–76, which revised portions of the Act in such a way as to enhance the mechanisms and remedies available to citizens seeking access to information about official government business. HB 01–1359 converted the then-existing fee provision of section 24–72–204(5), from one *permitting* the court to order a custodian to personally pay the applicant's costs and attorney fees upon a finding that denial of inspection was arbitrary and capricious, into one *mandating* an award of costs and reasonable fees to a prevailing applicant whenever the court fails to find that the custodian's denial was proper.[1] In light of the mandatory language of the current statute, the permissive language that preceded it, and the testimony of those favoring, as well as those opposing, the measure,[2] there can be little doubt that it was intended to mandate an award of costs and attorney fees in favor of the prevailing applicant except in situations in which the custodian properly denied access. The question before this court today is simply whether, as subsection (5) is currently written, a "prevailing applicant" is a person who, having been denied the right to inspect any record, applies to the district court for redress of that decision and as a result of that application succeeds in acquiring permission for inspection of that record; or, as the Representatives assert, is in effect a "prevailing party," in the sense that having been denied by the custodian the right of inspection, he applies to the district court for redress of that denial and is determined, in the broad discretion of the district court, to have succeeded "in the context of the overall litigation." *See Archer v. Farmer Bros. Co.*, 90 P.3d 228, 231 (Colo.2004).

1. The pertinent provision of the Act was modified as follows:

   Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and ~~upon a finding that the denial was arbitrary or capricious, it may order the custodian personally to pay the applicant's court costs and attorney fees in an amount to be determined by the court~~ SHALL AWARD COURT COSTS AND REASONABLE ATTORNEY FEES TO THE PREVAILING APPLICANT IN AN AMOUNT TO BE DETERMINED BY THE COURT.
   House Bill 01–1359, 2001 Colo. Sess. Laws 1074.

2. *See, e.g.*, Hearing on HB 01–1359 before the H. Comm. on Info. & Tech., 63rd Gen. Assembly, 1st Sess. (Mar. 28, 2001, at 10:32:40 a.m.) (statement from Representative Shawn Mitchell) ("[I]f someone makes a request for any public record of any kind and is denied, and then they have to go to court to get access to those records, they get their attorneys' fees paid by the government if they win."); Hearing on HB 01–1359 before the S. Comm. on Gov't, Veteran & Military Relations, & Transp., 63rd Gen. Assembly, 1st Sess. (Apr. 18, 2001, at 12:05:33 p.m.) (statement of Bob Trout, counsel for the Northern Colorado Water Conservancy District) (while speaking against the bill, noting that it "mak[es] attorneys' fee awards automatic against the government agency"); Senate Floor debate on HB 01–1359 before the Full Senate, 63rd Gen. Assembly, 1st Sess. (May 4, 2001, at 11:50:43 a.m.) (statement of Senate President Stan Matsunaka) ("[I]f the court rule[s] against [the custodian of records], then there's this automatic assessment of attorneys' fees.").

### III.

¶ 11 Whether the district court erred in denying any award of costs and fees to the Republican Party is therefore first and foremost a matter of statutory interpretation concerning the precise meaning of the term "prevailing applicant" as used in section 24–72–204(5).[3] As we have often indicated, a statute has meaning according to the legislative intent expressed in the language actually chosen by the legislature. *See, e.g., Marquez v. People*, 2013 CO 58, ¶ 7, 311 P.3d 265. Should that language admit of more than one reasonable understanding, it is considered to be ambiguous and must be construed. *Id.*

¶ 12 In that event, a number of intrinsic and extrinsic aids to construction have developed over centuries to assist in resolving the ambiguity and determining which among alternative reasonable interpretations is the appropriate one. *Id.* Many of these aids are little more than grammatical or syntactical conventions; others largely reflect conventions in legislative drafting; still others draw reasonable inferences from the relationship between a legislative enactment and external events, or actually seek to reconstruct the purpose of drafters, sponsors, or individual supporters. *Union Pac. R.R. v. Martin*, 209 P.3d 185, 188 (Colo.2009). All function in the service of construing a statute by selecting among reasonable interpretations of the particular language chosen by the legislature. *Id.*

¶ 13 On its face, the term "prevailing" could reasonably be understood to simply describe an applicant who has achieved a court order requiring the custodian to permit inspection of the record he seeks, or it could reasonably be understood to intend a further limitation on the recovery of a fee award, by narrowing the class of applicants entitled to such an award to those prevailing in the litigation as a whole. Simply as a matter of syntax, however, the applicable statutory provision is not structured in such a way as to suggest that "prevailing" was intended to impose a second and independent condition on the court's obligation to award a fee. The

pertinent sentence, beginning, "Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant," § 24–72–204(5), is clearly structured as a conditional sentence with a single condition, upon the satisfaction of which two obligations are imposed. Unless the court finds (or equally, if the court fails to find) that the denial of the right of inspection was proper, it is required to ("shall") do two things: 1) "order the custodian to permit such inspection" and 2) "award court costs and reasonable attorney fees." *Id.*

¶ 14 Immediately thereafter, in the same paragraph, the legislature authorizes a fee award in favor of the custodian only upon the satisfaction of two separate conditions. *See id.* "[T]he court shall award court costs and reasonable attorney fees to the custodian" only if: 1) "the court finds that the denial of the right of inspection was proper" and 2) "the court finds that the action was frivolous, vexatious, or groundless." *Id.* By juxtaposition, the structure of the fee provision for custodians, imposing one obligation upon the satisfaction of two conditions, stands in stark contrast to the structure of the provision for applicants, imposing two obligations upon the satisfaction of a single condition. *See id.*

¶ 15 In addition, the language of subsection (5) clearly entitles an applicant to apply to the district court for an order permitting inspection of "any record" as to which he has been denied access, and it premises a fee award in favor of an applicant on the court's failure to find that denial of "the right of inspection" was proper. *See id.* The statutory scheme nowhere suggests a requirement for the applicant to join, or a prohibition against it joining, in a single court proceeding, or action, all of its court applications to inspect records as to which it has been denied access by the same custodian, or even all court applications to inspect those records to which it feels entitled as a result of the same request. *See id.* Only the separate,

---

3. Because the propriety of the district court's determination that there was no "prevailing party" in the overall litigation is not before us on

this petition, the proper construction of the statute is actually the sole question on review in this case.

non-reciprocal fee provision for custodians makes any reference to the proceeding, or action, providing as it does for fees in favor of the custodian upon a finding that in addition to the denial of the right of inspection being proper, "the action" itself was also frivolous, vexatious, or groundless. *See id.* Finally, it is not without significance that the fee provision for applicants uses the definite, rather than indefinite, article in reference to the term "prevailing applicant," the natural implication of which is that if the court "order[s] the custodian to permit such inspection," there *is*, rather than simply *may be* in the discretion of the court, a prevailing applicant. *See id.*

¶ 16 Textual support for the construction of the district court, advanced to this court by the Representatives, rests largely on a single internal aid to construction. We have often relied on the time-honored proposition, or canon, that a construction rendering statutory language redundant, or superfluous, should be avoided. *See, e.g., Denver Publ'g Co. v. Bd. of Cnty. Comm'rs,* 121 P.3d 190, 195 (Colo.2005). Should the word "prevailing" be intended to do nothing more than describe an applicant who has succeeded in acquiring access to some record as to which access had previously been denied, then it would, as the argument goes, add nothing in this statutory sentence to the term "applicant," and would therefore be rendered superfluous. By contrast, if "prevailing" were understood as a reference to "prevailing party," a term construed by this court when it appears in contracts or statutes to intend a discretionary determination by the trial court whether one or the other party could fairly be considered to have prevailed in the litigation as a whole, *see, e.g., Archer,* 90 P.3d at 230–31, it would add meaning by narrowing the class of applicants entitled to a fee award. This reasoning, however, is unpersuasive for several reasons.

¶ 17 Initially, the superfluity principle, like all canons of construction, is merely an interpretive aid, not an absolute rule. Depending upon context and consideration of other, and often conflicting, interpretive aids, it may sometimes be more, and sometimes less, helpful in determining legislative intent. As the United States Supreme Court has noted, the superfluity principle "does not prescribe that a passage which could have been more terse does not mean what it says." *Bruesewitz v. Wyeth LLC,* — U.S. ——, 131 S.Ct. 1068, 1078, 179 L.Ed.2d 1 (2011). Quite the contrary, words and even clauses in constitutions and statutes that might in some sense be redundant are often specifically included to illuminate and clarify what would otherwise be merely implicit. *See generally,* Akhil Reed Amar, *Constitutional Redundancies and Clarifying Clauses,* 33 Val. U.L.Rev. 1 (1998).

¶ 18 Application of this interpretative aid is especially unwarranted when giving independent meaning to a term creates a redundancy problem of its own. *See Bruesewitz,* — U.S. at ——, 131 S.Ct. at 1078 (observing petitioner's interpretation gave meaning to a throwaway term only at the expense of rendering the remainder of the provision superfluous); *see also Microsoft Corp. v. i4i Ltd. P'ship,* — U.S. ——, 131 S.Ct. 2238, 2248, 180 L.Ed.2d 131 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute." (internal citations and quotations omitted)). Construing the word "prevailing" in this statute to implicitly incorporate the "prevailing party" doctrine would have the effect of rendering unnecessary or superfluous the very condition upon which a fee award is expressly premised. *See* § 24–72–204(5). Because an applicant could be a prevailing party with regard to the litigation as a whole only if the court failed to find that the custodian's denial of the right of inspection was proper, at least with regard to some sought-after record, expressly stating as much as a condition of a fee award would itself add nothing. *See Archer,* 90 P.3d at 230 (conducting prevailing party assessment requires determination whether party has prevailed on a significant issue or derived some of the benefits sought).

¶ 19 In any event, modifying "applicant" with the adjective "prevailing" can hardly be considered redundant, even according to the construction of the court of appeals. Limiting "applicant" to "prevailing applicant" not only clarifies, or makes express what would

otherwise be merely implicit—that an applicant who achieves the right of inspection is a prevailing applicant—but actually provides direction concerning the costs and fees award to which he is entitled. While the statutory provision mandates an award, it leaves to the district court the determination of the amount of that award. § 24–72–204(5). The award to the "prevailing applicant" should include no more than the costs and attorney fees incurred with regard to the records as to which he has actually succeeded in gaining access, rather than his costs and attorney fees in prosecuting the action as a whole. *See id.*

¶ 20 For this very reason, although the statute prohibits the district court from denying the applicant an award of costs and attorney fees "[u]nless the court finds that the denial of the right of inspection was proper," it does not deprive the court of discretion with regard to the amount of the fee. *See id.* Because a partially successful application to the district court will necessarily require an apportionment of costs and fees among the applicant's successful and unsuccessful efforts, more than a mere accounting is necessarily implicit in the statute's direction for the court to determine the amount of the award. *See id.*

## IV.

¶ 21 Because section 24–72–204(5), when properly construed, mandates an award of costs and reasonable attorney fees in favor of any person who applies for and receives an order from the district court requiring a custodian to permit inspection of a public record, as provided for by the statute, the judgment of the court of appeals is affirmed. Upon remand, the district court should exercise its discretion in determining the amount of costs and reasonable attorney fees to which the Colorado Republican Party, as prevailing applicant, is entitled in light of its partial success in this litigation.

CHIEF JUSTICE RICE dissents, and JUSTICE HOBBS joins in the dissent.

CHIEF JUSTICE RICE dissenting.

¶ 22 An individual who requests and is denied access to public records can apply for judicial review of the custodian's denial in district court under section 24–72–204(5), C.R.S. (2013), of the Colorado Open Records Act (CORA). If the reviewing district court determines that the custodian's denial was improper, then section 24–72–204(5) requires the district court to "award court costs and reasonable attorney fees to the prevailing applicant." The meaning of the term "prevailing applicant" is the sole question before this Court.

¶ 23 The majority concludes that an applicant who was improperly denied access to a *single* public record is always a "prevailing applicant," even if the applicant requested thousands of records. *See* maj. op. ¶¶ 10, 19, 21. Thus, under the majority's analysis, the district court has no discretion to determine whether an applicant qualifies as a "prevailing applicant" because the district court's determination that the custodian improperly denied the applicant access to any public record automatically renders that applicant a "prevailing applicant."

¶ 24 Unlike the majority, I would hold that the district court has discretion to determine whether an applicant prevailed on a significant issue in the CORA litigation and is therefore entitled to a mandatory award of court costs and reasonable attorney fees. Thus, under my analysis, only an applicant who was denied access to a *significant proportion* of the records they requested qualifies as a "prevailing applicant." Because the majority opinion unjustifiably strips district courts of discretion, I respectfully dissent. Accordingly, I would reverse the judgment of the court of appeals to the extent that it misinterprets the meaning of "prevailing applicant" in section 24–72–204(5). *See Colo. Republican Party v. Benefield,* —— P.3d —— (Colo.App. No. 10CA2327, Nov. 10, 2011).

### I. Colorado Open Records Act

¶ 25 CORA facilitates open government by ensuring the disclosure of public records. *See Wick Commc'ns Co. v. Montrose Cnty. Bd. of Cnty. Comm'rs,* 81 P.3d 360, 364

(Colo.2003); *see also* § 24–72–201, C.R.S. (2013) ("It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times. . . ."). Thus, under CORA, "the custodian of a public record is generally required to make that record available to the public." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo.2011); *see also Int'l Bhd. of Elec. Workers Local 68 v. Denver Metro. Major League Baseball Stadium Dist.*, 880 P.2d 160, 165 (Colo.App.1994) (noting that CORA "provides for a presumption in favor of disclosure"). Although CORA's general purpose is to provide broad access to public records, the legislature has affirmatively limited this general purpose by creating exceptions to the statutory disclosure requirements, *see* § 24–72–204(3)(a), and by permitting custodians to recover court costs and attorney fees incurred in resisting groundless CORA requests, *see* § 24–72–204(5). Thus, CORA reflects the legislature's intent to protect both the public's broad right to access public records and the government's more limited right to withhold certain records.

¶ 26 The CORA provision at issue in this case—section 24–72–204(5)—evidences these dual purposes by entitling both custodians and applicants to court costs and reasonable attorney fees in specific, but disparate, circumstances. Singularly relevant to this case, section 24–72–204(5) requires the district court to "award court costs and reasonable attorney fees to the *prevailing applicant*" if the district court determines that the custodian improperly denied the applicant access to any public record. *Id.* (emphasis added). The sole question before this Court is whether the term "prevailing applicant" in section 24–72–204(5) encompasses all applicants who are improperly denied access to at least one public record or only applicants who are improperly denied access to a substantial proportion of the public records they requested. In other words, we must determine whether the legislature intended for the term "prevailing applicant" to expand—or limit—the class of applicants who are entitled to mandatory court costs and attorney fees.

## II. "Prevailing Applicant" Is a Limiting Term

¶ 27 The term "prevailing applicant" is not defined in CORA, and this Court has not yet had occasion to interpret the term as it is used in section 24–72–204(5). This Court's primary task when reviewing a statute is to ascertain and give effect to the legislature's intent, which is the polestar of statutory construction. *Daniel v. City of Colo. Springs*, 2014 CO 34, ¶ 11, 327 P.3d 891. To decipher statutory meaning, this Court gives statutory words and phrases "their ordinary and accepted meaning unless they have acquired a technical meaning through legislative definition or judicial construction." *Parrish v. Lamm*, 758 P.2d 1356, 1368 (Colo.1988); *see also* § 2–4–101, C.R.S. (2013).

¶ 28 Colorado case law suggests that the term "prevailing applicant" in section 24–72–204(5) has acquired a technical meaning through judicial construction that is analogous to the term "prevailing party." For example, Colorado appellate courts have previously concluded that slight variations on the words "prevailing" or "party"—such as "winning party," "successful plaintiff," and "breaching party"—are equivalent to the term "prevailing party" and therefore trigger a prevailing party analysis. *See, e.g., Van Steenhouse v. Jacor Broad. of Colo. Inc.*, 958 P.2d 464, 468–69 (Colo.1998) (concluding that the term "winning party" under section 8–4–114, C.R.S. (1997), is analogous to the term "prevailing party" under 42 U.S.C. § 1988 (1994) and applying a prevailing party analysis); *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1112, 1114–15 (Colo.1996) (implicitly concluding that the term "successful plaintiffs" in article X, section 20(1) of the Colorado Constitution is analogous to the term "prevailing party" and applying a prevailing party analysis); *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo.App.2003) (implicitly concluding that the term "breaching party" in a contractual fee-shifting provision is analogous to the term "non-prevailing party" and explicitly rejecting the plaintiff's argument that the "breaching party" language prevented the trial court from employing a prevailing party analysis). The *Black's Law Dictionary* definition of "prevailing par-

ty"—which indicates that the term "successful party" is synonymous with the term "prevailing party"—further reinforces the notion that slight variations on the words "prevailing" or "party" have acquired a technical meaning that is equivalent to "prevailing party." *See* 1232 (9th ed. 2009) (providing the definition of "prevailing party" and the following notation: "Also termed *successful party*" (emphasis added)).

¶ 29 Thus, the "prevailing applicant" language in section 24–72–204(5) should be understood to trigger the standard prevailing party analysis whenever the district court determines that the custodian improperly denied the applicant access to any public records. Under this standard analysis, a "prevailing party" is "one who prevails on a *significant issue* in the litigation and derives some of the benefits sought by the litigation." *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo.2004) (emphasis added). Applying this analysis in the context of section 24–72–204(5), a "prevailing applicant" is an applicant who was improperly denied access to a *significant proportion* of the records he requested—i.e., an applicant who prevailed on a significant issue in the CORA litigation.[1] If the district court determines that the applicant prevailed on a significant issue in the litigation, the district court is *then* required to award court costs and attorney fees. *Cf. Anderson v. Pursell*, 244 P.3d 1188, 1194–95 (Colo.2010) (conducting a prevailing party analysis in order to determine whether either party to a contract was entitled to the mandatory award of reasonable attorney fees provided for in the contract).

¶ 30 By stripping the trial court of its discretion to consider whether an applicant prevailed on a significant issue in the CORA litigation, the majority's holding forces the government to litigate over court costs and attorney fees *any time* it improperly denies access to a single record, regardless of how many records were requested and properly denied. Thus, under the majority's analysis, an applicant who is denied one document out

of thousands is automatically entitled to court costs and reasonable attorney fees. This result, which places the government in the untenable position of risking liability for court costs and attorney fees or disclosing potentially protected records, is antithetical to the legislature's clear intent to protect the government while also ensuring access to public records.

### III. Conclusion

¶ 31 Because I would hold that the term "prevailing applicant" in section 24–72–204(5) vests the trial court with discretion to determine whether an applicant prevailed on a significant issue in the CORA litigation and is therefore entitled to a mandatory award of court costs and reasonable attorney fees, I respectfully dissent from the majority's opinion. Accordingly, I would reverse the judgment of the court of appeals to the extent that it misinterprets the meaning of "prevailing applicant."

I am authorized to state that JUSTICE HOBBS joins in this dissent.

---

1. Although I agree with the district court's conclusion that section 24–72–204(5) calls for a standard prevailing party analysis, I do not necessarily agree with the district court's determination that the Colorado Republican Party was not a prevailing applicant. I do not substantively analyze the district court's determination, however, because it is not before the Court on this petition. *See* maj. op. ¶ 11, n.3.