The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 27, 2024

**2024COA124**

**No. 23CA0995, *Migoya v. Wheeler* — Government — Colorado
Open Records Act — Exceptions; Education — Licensed
Personnel Performance Evaluation Act**

The Colorado Open Records Act (CORA) provides that "[a]ll

public records shall be open for inspection by any person at

reasonable times, except as provided [in the exceptions set forth in

CORA] or as otherwise provided by law." § 24-72-203(1)(a), C.R.S.

2024. A division of the court of appeals holds, as a matter of first

impression, that a statute outside CORA — section 22-9-109,

C.R.S. 2024, of the Colorado Licensed Personnel Performance

Evaluation Act (CLPPEA) — carves out a further exception to CORA

for the evaluation reports of school districts' licensed personnel and

the public records used in preparing those reports. Concluding

that the requested disciplinary records of school administrators

were not subject to disclosure under CLPPEA, the division affirms,

albeit on grounds other than those underlying the district court's

decision.

COLORADO COURT OF APPEALS     **2024COA124**

---

Court of Appeals No. 23CA0995
City and County of Denver District Court No. 22CV32315
Honorable Marie Avery Moses, Judge

---

David Migoya and Denver Gazette,

Plaintiffs-Appellants,

v.

Stacy Wheeler, in her official capacity as custodian of records, and Denver
Public Schools,

Defendants-Appellees,

and

Denver School Leaders Association,

Intervenor-Appellee.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE LIPINSKY
J. Jones and Hawthorne*, JJ., concur

Announced November 27, 2024

---

Rachael Johnson, Denver, Colorado, for Plaintiffs-Appellants

Semple, Farrington, Everall & Case, P.C., Jonathan P. Fero, M. Brent Case,
Denver, Colorado, for Defendants-Appellees

Rosenblatt, Gosch & Reinken, PLLC, Joseph M. Goldhammer, William R.
Reinken, Greenwood Village, Colorado, for Intervenor-Appellee

¶ 1    The Colorado Open Records Act (CORA), §§ 24-72-200.1 to -205.5, C.R.S. 2024, rests on the principle that members of the public have the right to know about their public officials' conduct. *See* Legis. Council, Colo. Gen. Assembly, *Open Public Records for Colorado*, Rsch. Publ'n No. 126, at xi-xii, para. 5 (1967). "[E]xcessive government secrecy, especially when imposed arbitrarily by elected or administrative officials, can endanger the freedom of speech concept embodied in the first amendment and may threaten democracy generally." *Id.* at xi, para. 1. The General Assembly enacted CORA following the release of the Legislative Council's report on open public records, which noted Colorado's need for such a statute.

¶ 2    The touchstone of CORA is that "[a]ll public records shall be open for inspection by any person at reasonable times, except as provided [in the exceptions set forth in CORA] or as otherwise provided by law." § 24-72-203(1)(a), C.R.S. 2024. CORA defines "[p]ublic records" as "all writings made, maintained, or kept by the state, any agency, institution, a nonprofit corporation . . . , or political subdivision of the state." § 24-72-202(6)(a)(I), C.R.S. 2024.

¶ 3    But CORA is far from limitless.  Nineteen discrete exceptions appear in the statute itself.  *See* § 24-72-204(3)(a)(I)-(XXIII), C.R.S. 2024.  An additional catch-all exception applies when, "in the opinion of the official custodian" of a requested public record, "disclosure of the contents of [the] record would do substantial injury to the public interest."  § 24-72-204(6)(a).

¶ 4    In this case, we consider whether a statute outside the confines of CORA — section 22-9-109, C.R.S. 2024, of the Colorado Licensed Personnel Performance Evaluation Act (CLPPEA) — carves out a further exception to CORA for the evaluation reports of school districts' licensed personnel, as well as the public records used in preparing those reports.  *See* § 22-9-109(1) ("Notwithstanding section 24-72-204(3), an evaluation report and all public records, as defined in section 24-72-202, that are used in preparing the evaluation report are confidential . . . .").

¶ 5    Plaintiffs, David Migoya and the Denver Gazette (jointly, the Gazette), submitted a CORA request to the records custodian of Denver Public Schools (DPS) for the disciplinary records of all DPS administrators (the subject records) created during the 2021 calendar year.  DPS denied the Gazette's request, and the district

2

court upheld the denial. The Gazette appeals the court's order concluding that it is not entitled to inspect the subject records. We affirm, albeit on grounds different from those underlying the court's decision.

## I. Background Facts and Procedural History

¶ 6      On January 6, 2022, Migoya, a reporter for the Denver Gazette newspaper, submitted a CORA request to Stacy Wheeler, in her capacity as DPS's custodian of records, for "any final summary memos (FRISK) of disciplinary action — including but not limited to letters of wrongdoing, memos to file, letters of placement on leave, suspension, and/or termination — against any [DPS] administrator, to include assistant principals, principals, and any director/administrator above those positions, for the 2021 Calendar Year." ("FRISK" refers to DPS's human resources standards for how letters of warning, letters of reprimand, and letters regarding suspension without pay are written.)

¶ 7      Although, on January 15, 2022, Wheeler informed the Gazette that DPS would grant its request, fifteen days later, she said that DPS had reversed its position and would not grant the Gazette access to the subject records because they fall within the

"personnel file exemption" of CORA, section 24-72-204(3)(a)(II)(A), and in light of the "public policy favoring privacy [and] efficient operation of schools."

¶ 8     In an email to Wheeler dated January 26, 2022, Migoya asserted that CORA's personnel files exception "is wholly inapplicable to the [subject] records," and further, the "public policy favoring privacy [or] efficient operation of schools" is not grounds for refusing to disclose records under CORA.

¶ 9     In a response dated January 31, 2022, Wheeler said that "CORA prohibits [DPS] from disclosing certain records, including 'personnel files.'" Wheeler added that "CORA allows [DPS] to withhold 'records otherwise deemed open and subject to disclosure and release' if [DPS] has a good faith belief that 'such release would do substantial injury to the public interest.'"

¶ 10    The Gazette put DPS on notice that it would file an application for an order to show cause under section 24-72-204(5)(a). It subsequently filed a complaint, together with an application, in the court. The Denver School Leaders Association (DSLA) filed a motion to intervene, which the court granted over the Gazette's objection. (DSLA is "a labor organization with exclusive collective bargaining

representation rights for various classifications of school leaders" in DPS.)

¶ 11 The court determined that the subject records are not exempt from disclosure under CORA's personnel files exception. But the court also found that DPS had reserved its right to argue that public disclosure of the subject records "would do substantial injury to the public interest." (If a court orders that records requested under CORA should be open to public inspection, "the official custodian of public records may then apply to the district court to restrict disclosure if such disclosure would do substantial injury to the public interest." *Gumina v. City of Sterling*, 119 P.3d 527, 532 (Colo. App. 2004) (citing § 24-72-204(6)(a)).

¶ 12 The court permitted DPS to file, no later than December 2, 2022, an application to restrict access to the subject records premised on the "substantial injury to the public interest" exception contained in section 24-72-204(6)(a), and it ordered that any response must be filed no later than December 9, 2022. DPS and DSLA filed a joint motion to bar the Gazette from accessing the subject records under section 24-72-204(6)(a) on December 2. The Gazette filed an objection to the joint motion, and the court

scheduled an evidentiary hearing on the motion for January 23, 2023.

¶ 13     Three days before the hearing, DSLA filed with the court a letter it had sent to the Gazette's counsel on January 13, 2023 (the DSLA letter).  In its letter, DSLA previewed the anticipated testimony of its witness Dr. Moira Coogan, a DPS principal, and argued, for the first time in this case, that the subject records were protected from disclosure under section 22-9-109(1) of CLPPEA, as well as under CORA.

¶ 14     The Gazette responded with two filings.  First, it filed a motion in limine in which it argued, among other points, that the court should preclude Coogan from testifying at the hearing because her testimony would be "non-factual and irrelevant."  Second, it filed a motion to strike the DSLA letter because the letter constituted an unauthorized surreply or supplemental brief.

¶ 15     At the hearing, the court denied the Gazette's motions, although it granted the Gazette's counsel an opportunity to respond to the arguments raised in the DSLA letter.  The court further allowed the Gazette to object on relevance grounds to testimony presented at the hearing and to address the legal arguments in the

DSLA letter "during closing arguments and through the submission of post-hearing proposed findings of fact and conclusions of law." The Gazette's counsel consented to the court's proposed accommodations.

¶ 16     The court then heard testimony from Jennifer Troy, a senior DPS administrator. She testified that school administrators reasonably expected that their evaluation reports and the public records used in preparing them would remain confidential and that upending such expectation would make it difficult for DPS to recruit and retain school leaders. She also explained that disclosure would damage school leaders' trust in the supervisors who coach and encourage the leaders to learn from their mistakes.

¶ 17     Coogan testified that all DPS principals and assistant principals must hold professional licenses and are evaluated under CLPPEA. She said that any documented corrective action regarding a principal or assistant principal is part of the "body of evidence" used in preparing their evaluations.

¶ 18     In a written order, the court concluded that DPS and DSLA "carried their burden of proof and . . . established that disclosure of the [subject] records as requested by [the Gazette]

would substantially injure the public." The court specifically found that disclosure of the subject records would "likely result in DPS having substantial difficulty retaining DPS school leaders and recruiting new candidates to serve as school leaders"; negatively impact "the goal of coaching and improving DPS school leaders"; and have "a chilling effect on the ability of supervisors to effectively train school principals, assistant principals and administrators."

¶ 19 The court concluded that, for these reasons, the Gazette was not entitled to inspect the subject records because of CORA's substantial injury exception. While the court acknowledged the CLPPEA argument that DSLA raised in its letter and at the hearing, the court did not rely on section 22-9-109(1) in concluding that the subject records were exempt from disclosure. The Gazette appeals the court's order denying its request to inspect the subject records.

## II. Analysis

¶ 20 The Gazette contends that the court erred by

(1) allowing DSLA to file the DSLA letter, which the Gazette characterizes as an unauthorized surreply or supplemental brief, and by allowing DSLA to present new arguments in the DSLA letter;

(2)    permitting Coogan to provide what the Gazette characterizes as improper opinion testimony;

(3)    concluding that DPS and DSLA met their burden of proving that disclosing the subject records would cause substantial injury to the public interest; and

(4)    failing to address the Gazette's request for an award of attorney fees and costs under section 24-72-204(5)(b) of CORA.

¶ 21    We hold that CLPPEA protected the subject records from disclosure, and we do not reach the separate issue of whether their disclosure would cause substantial injury to the public interest under CORA.

## A.    The DSLA Letter

¶ 22    The Gazette first contends that the court erred by allowing DSLA to assert, only days before the hearing, the legal arguments presented for the first time in the DSLA letter.  Similarly, the Gazette argues that the DSLA letter was a surreply or supplemental brief that DSLA could not file without prior leave of court.

¶ 23    We review a district court's decision to accept or reject a brief for an abuse of discretion.  *See Olson v. State Farm Mut. Auto. Ins.*

*Co.*, 174 P.3d 849, 860 (Colo. App. 2007) (holding that a trial court has the discretion to deny a request to file a surreply); *see also U.S. Bank Tr., N.A. v. Rudick,* 67 N.Y.S.3d 646, 647 (App. Div. 2017) ("While unauthorized surreplies containing new arguments generally should not be considered," a court has "the authority to regulate the motion practice before it, as well as the discretion to determine whether to accept late papers or even surreply papers for 'good cause.'" (quoting N.Y. C.P.L.R. 2214(c) (McKinney 2024))). "A trial court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair, or it misapplies the law." *HMLL LLC v. MJM Holdings Ltd.*, 2024 COA 85, ¶ 17, ___ P.3d ___, ___.

¶ 24 The Gazette cites federal court authorities not binding on this court to support its argument that DSLA required leave of court before it could submit its purported surreply or supplemental brief. But the Gazette fails to point us to any binding authority holding that a Colorado state court abuses its discretion by accepting a "surreply" or a "supplemental brief" that the court did not previously authorize, particularly if, as here, the document raises relevant legal issues, and the court takes affirmative steps to minimize any resulting prejudice to the opposing party.

¶ 25    Contrary to the Gazette's assertion, for two reasons, the authorities and arguments raised in the DSLA letter were relevant to whether the Gazette had the right to inspect the subject files. First, those authorities and arguments were germane to determining whether a "substantial injury to the public interest" justified nondisclosure of the subject records under section 24-72-204(6)(a).  In its order concluding that the Gazette was not entitled to inspect the subject records, the court explained that DPS's administrators had a reasonable expectation that the subject records would be kept confidential because CLPPEA protects from disclosure the evaluation reports of school districts' licensed personnel and the public records used in preparing them.  *See* § 22-9-109(1).

¶ 26    DSLA explained in its letter that the collective bargaining agreement between DPS and DSLA informed the school administrators that the subject records would be kept confidential, consistent with section 22-9-109(1).  DSLA also noted that "substantial injury to the public interest" would result if DPS disregarded those expectations by publicly disclosing documents that the school administrators understood would be kept

11

confidential.  Specifically, DSLA asserted, with support from Troy's testimony, that "disclosure of the [subject] records would impair the ability of administrators to provide candid and accurate evaluations, and that DPS would have trouble recruiting and retaining school leaders" as a consequence.  The Gazette did not call any witnesses at the hearing, much less witnesses to rebut Coogan's and Troy's testimony.

¶ 27    Second, as we discuss below in Part II.C.2, the authorities and arguments in the DSLA letter addressed an independent legal basis for denying the Gazette's request to inspect the subject files.  In denying the Gazette's motion to strike the DSLA letter, the court explained that it "want[ed] to get this case right," apparently meaning that it wished to review all applicable legal authorities.  As the court explained,

> [W]hether it's prejudicial to [the Gazette] or not, I have to consider what the legal structure is that exists . . . and what the expectations are.  So I can't ignore a statute, I can't ignore a pattern of practice, right?  Just because it might prejudice [the Gazette] because [DSLA] raised it at the last minute.  I can't ignore that stuff.

¶ 28    Moreover, the court took steps to minimize any prejudice to the Gazette resulting from the court's consideration of the DSLA letter, even though DSLA tendered its letter to the court only three days before the hearing. The court noted, "In my toolbox, . . . things that I can do to remedy prejudice are grant continuances, . . . allow additional briefing, things along those lines." The court said it would allow the Gazette "to respond to the legal arguments made by DSLA during closing arguments and through the submission of a post-hearing proposed findings of fact and conclusions of law."

¶ 29    The Gazette's counsel accepted the court's offer of an opportunity for "additional briefing at the close of this hearing." Significantly, the Gazette's counsel expressed no objection to the court's proposed procedure to minimize any prejudice to the Gazette resulting from the filing of the DSLA letter so close to the hearing date.

¶ 30    These efforts demonstrate that the court's decision to accept the DSLA letter was not "manifestly unreasonable, arbitrary, or unfair," as the Gazette now contends, but rather reflected the court's exercise of judicial discretion to ensure that the issues in this case were fairly and thoroughly adjudicated. *See HMLL LLC,*

¶ 17, ___ P.3d at ___.  Therefore, we hold that the court did not abuse its discretion by considering the arguments and authorities in the DSLA letter or by allowing DSLA to submit it without prior leave of court.

## B.    Coogan's Testimony

¶ 31    The Gazette further contends that the court erred by allowing Coogan to provide what it characterizes as improper opinion testimony interpreting CLPPEA.

¶ 32    A lay witness may testify to opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [CRE] 702."  CRE 701. We review a district court's decision to admit evidence for an abuse of discretion.  *Wolven v. Velez*, 2024 COA 8, ¶ 9, 547 P.3d 423, 426.

¶ 33    Coogan's testimony did not exceed the bounds of CRE 701. DPS and DSLA's CORA argument rested primarily on their contention that disclosing the subject records would result in substantial injury to the public interest.  The school administrators' expectation that their evaluation reports and the public records

14

used in preparing those reports would remain confidential rested, in part, on their understanding of CLPPEA and the other statutes that DPS and DSLA cited in their court filings. To support these arguments, they called Coogan and other witnesses to explain the administrators' expectations and the grounds for those expectations — not to interpret the cited statutes.

¶ 34    For example, based on her firsthand experience as a DPS principal and the president of DSLA, Coogan testified how CLPPEA affects her work in evaluating employees. Specifically, she testified, "My expectation would [be] — that it would be confidential because in the statute that governs all of our evaluations, it's laid out that . . . the evaluation report and the evaluation ratings are confidential for everybody covered under that statute, which would include principals and assistant principals." Coogan's testimony encompassed only her own expectations regarding how CLPPEA affected her job responsibilities. This factual information complied with CRE 701 and was within the scope of her personal knowledge. *See* CRE 602 (stating that a fact witness may only testify to a matter if the witness has personal knowledge of the matter).

¶ 35    Further, Coogan's testimony supported DSLA's argument that CLPPEA provides an independent basis to deny disclosure.

¶ 36    Because the testimony was relevant and complied with CRE 701, we hold that the court did not abuse its discretion by allowing it.

### C.    Disclosure of the Subject Records

¶ 37    Although the court concluded that the Gazette was not entitled to inspect the subject records because their disclosure would do "substantial injury to the public interest," § 24-72-204(6)(a), we resolve this appeal by applying CLPPEA rather than CORA.  We do so because section 22-9-109(1) independently bars disclosing the subject records to the Gazette.  Thus, we need not reach the parties' CORA arguments.

### 1.    Preservation and Standard of Review

¶ 38    The Gazette argues that we should not consider CLPPEA as an independent basis to deny inspection because DSLA did not preserve its CLPPEA argument.  We disagree.

¶ 39    "If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal."  *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50, 532

16

P.3d 776, 788 (quoting *Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21, 436 P.3d 597, 600). In the DSLA letter, which, as discussed above, the court accepted in its discretion, DSLA raised CLPPEA as an independent basis to deny disclosure of the subject records. It is of no consequence that the court chose to resolve the issue under CORA instead. Because DSLA presented the "sum and substance" of its CLPPEA argument to the court, it is properly preserved for appellate review. *Id.* (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010)).

¶ 40    We are likewise unpersuaded by the Gazette's argument that we should not consider CLPPEA because the Gazette did not address the statute in its opening brief. The Gazette misses the point that DSLA included the CLPPEA argument in its answer brief in response to the CORA argument in the Gazette's opening brief. The Gazette does not cite any authorities barring us from considering responsive arguments in an answer brief. *Cf. People v. Rainer*, 2013 COA 51, ¶ 80, 412 P.3d 520, 537 (declining to consider the appellee's new arguments made during oral argument that were not made either in the trial court or in the answer brief on appeal), *rev'd on other grounds*, 2017 CO 50, 394 P.3d 1141. In any

17

event, we may affirm the court's decision on any ground supported by the record. *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004).

¶ 41 "Issues of statutory construction . . . are questions of law that we review de novo." *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 40, 442 P.3d 402, 411. When interpreting a statute, "[w]ords and phrases are to be given their plain and ordinary meanings, read in context, and construed according to the rules of grammar and common usage." *Id.*

¶ 42 "In evaluating a district court's ruling under CORA, we review the court's factual findings for clear error but review its construction and application of CORA de novo." *Simpson v. Harmer*, 2024 COA 30, ¶ 14, 551 P.3d 669, 673; *see also Jefferson Cnty. Educ. Ass'n v. Jefferson Cnty. Sch. Dist. R-1*, 2016 COA 10, ¶ 13, 378 P.3d 835, 838. Although no Colorado appellate court has previously applied these general standards of review to CLPPEA, we conclude that the standards of review governing a district court's CORA rulings also govern appellate review of CLPPEA rulings.

## 2. CLPPEA Bars Disclosure of the Subject Records

¶ 43 The General Assembly explained in CLPPEA that "[a] system to evaluate the effectiveness of licensed personnel is crucial to improving the quality of education in this state" and "declare[d] that such a system shall be applicable to all licensed personnel in the school districts . . . throughout the state." § 22-9-102(1)(a), C.R.S. 2024. Among other provisions, CLPPEA prescribes the processes that the state's educational bodies must follow when evaluating their teachers and administrators. *See* §§ 22-9-104 to -108, C.R.S. 2024.

¶ 44 Section 22-9-109(1) of CLPPEA provides that "[n]otwithstanding section 24-72-204(3), an evaluation report and all public records . . . that are used in preparing the evaluation report are confidential." Section 24-72-204(3)(a) is the CORA provision that lists the types of public records for which "[t]he custodian shall deny the right of inspection . . . , unless otherwise provided by law."

¶ 45 Under section 22-9-109(1), "an evaluation report and all public records . . . that are used in preparing the evaluation report" may only be disclosed "to an educator being evaluated, to the duly

19

elected and appointed public officials who supervise the educator's work, and to a hearing officer conducting a hearing . . . or the court of appeals reviewing a decision of the local board of education."  An evaluation report and all public records used in preparing the evaluation report are otherwise confidential.  (Section 22-9-109(1) also contains two exceptions not applicable here: Certain "evaluation report[s] of the chief executive officer of any school district . . . must be open for inspection by any person at reasonable times," and "[e]valuation reports and all public records . . . used in preparing the evaluation reports are available to individuals responsible for reviewing an appeal made by a nonprobationary teacher."  § 22-9-109(1)(a)-(b).)

¶ 46    The use of "[n]otwithstanding" in the first clause of section 22-9-109(1) informs us that the General Assembly intended subsection (1) to make clear that the disclosure exceptions in CORA do not preclude other statutory exceptions.  "The word 'Notwithstanding' is one in opposition to, and not one of compatibility with, another statute.  In fact, the word 'Notwithstanding' actually means 'in spite of.'"  *Theodore Roosevelt Agency, Inc. v. Gen. Motors Acceptance Corp.*, 398 P.2d 965, 966

(Colo. 1965) (first citing The New Roget's Thesaurus of the English Language in Dictionary Form (Norman Lewis ed. 1961); and then quoting Webster's New International Dictionary (2d ed. 1958)); *see Premier Car Rental, Inc. v. Gov't Emps. Ins. Co.*, 637 N.Y.S.2d 177, 178-79 (App. Div. 1996) ("[N]otwithstanding" means "without prevention or obstruction from or by; in spite of." (quoting Webster's Third New International Dictionary 1545 (1961))). Further, CORA itself contemplates that other statutes can provide an exception to CORA's disclosure requirements. *See* § 24-72-204(1)(a) ("The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except . . . [if] [s]uch inspection would be contrary to any state statute.").

¶ 47 Thus, section 22-9-109(1) prohibits disclosing evaluation reports of licensed school administrators and all public records used in preparing such reports, regardless of whether such documents are subject to disclosure under CORA. For this reason, we examine whether, as a matter of law, the subject records are the type of documents that section 22-9-109(1) protects from disclosure.

¶ 48     The subject records are "[p]ublic records" because they are "writings made, maintained, or kept by . . . [a] political subdivision of the state . . . for use in the exercise of functions required or authorized by law . . . or involving the receipt or expenditure of public funds." § 24-72-202(6)(a)(I). "[E]very . . . school district . . . within this state" is a "[p]olitical subdivision." § 24-72-202(5). DPS is undisputedly a school district. The evidence showed that DPS makes, maintains, or keeps the subject records "for use in the exercise of functions required or authorized by law" — evaluations of DPS administrators. § 24-72-202(6)(a)(I).

¶ 49     The court found, based on the witnesses' testimony, that the subject records consist exclusively of the type of documents "used in preparing" evaluation reports of DPS administrators. § 22-9-109(1). We do not second-guess that finding of fact because the record supports it. *See Carousel Farms Metro. Dist.*, ¶ 19, 442 P.3d at 407 (explaining that appellate courts do not make findings of fact). Therefore, under section 22-9-109(1)'s plain language, the Gazette is not entitled to inspect the subject records.

¶ 50     Our interpretation of CLPPEA is consistent with the regulations implementing the statute. Those regulations do not call

22

into question our determination that a school district employee's disciplinary records are part of the body of evidence used in preparing the employee's evaluation report. *See* Dep't of Educ. Rules 1.14, 2.2(D), 2.2(D)(1), 5.1(A)(3), 5.1(A)(4), 1 Code Colo. Regs. 301-87.

¶ 51 All Colorado school districts must use a "Principal Evaluation System" when evaluating their principals. *Id.* at Rule 1.14. A school district's principal evaluation system must include consideration of the principal's "professionalism through ethical conduct, reflection, and external leadership," including whether the principal "demonstrate[s] high standards for professional conduct." *Id.* at Rules 2.2(D), 2.2(D)(1). In addition, the principal's evaluation must include "the weighting and aggregation of evidence of performance." *Id.* at Rule 1.14. These rules indicate that a principal's disciplinary history is part of the body of evidence that informs the principal's evaluation report. It would be surprising indeed if a school district did *not* use documentation of discipline imposed against a principal when evaluating the principal.

¶ 52 Further, the purposes of a school district's principal evaluation system include, as relevant here, "serving as

documentation for an unsatisfactory performance dismissal proceeding" and "serving as a measurement of the professional growth and development of licensed personnel." *Id.* at Rules 5.1(A)(3), 5.1(A)(4). Disciplinary records must be included in the documentation for an unsatisfactory performance dismissal proceeding.

¶ 53    Moreover, DPS's policies and training materials for evaluators reinforce our interpretation of CLPPEA. DPS instructs its evaluators to "utilize a robust body of evidence in scoring leaders that includes continuous improvement processes, coaching conversations, observations, school/classroom visits, walk throughs, survey data, CollaboRATE feedback, informal feedback, staff and community input, 1:1 meetings, goals, the school[']s strategic plan, the Black Excellence Plan and professional practice and assessment data." Denver Pub. Schs., *Leadership Excellence and Development, LEAD Framework* 6 (Aug. 2023), https://perma.cc/XFX3-QZTE. Nothing in that body of evidence suggests that documents concerning an administrator's disciplinary history are excluded when the administrator is evaluated.

¶ 54     The Gazette argues that CLPPEA has no bearing on its request for the subject records because CLPPEA "narrowly applies to the enumerated evaluative paperwork public agencies must generate to comply with CLPPEA's operative provisions." But we must construe CLPPEA's scope as drafted, not as the Gazette characterizes it. As explained above, CLPPEA unequivocally bars school districts from disclosing to third parties any licensed professionals' "evaluation reports" and the documents "used in preparing" those reports. The record shows that the subject records are among the documents "used in preparing" the evaluation reports of DPS administrators.

¶ 55     In addition, the Gazette urges us to interpret CLPPEA narrowly to avoid "exempt[ing] vast categories of information from disclosure." But again, we must apply CLPPEA as drafted. Our role is not to second-guess the General Assembly's policy decisions. If the Gazette believes that CLPPEA prevents members of the public from accessing an excessive number of documents that are matters of public interest, its remedy lies in the legislative, not the judicial, branch of our state government.

## D. Attorney Fees

¶ 56    The Gazette requested an award of attorney fees and costs, as well as appellate fees, under section 24-72-204(5)(b) of CORA. The parties dispute whether the Gazette preserved its request. But regardless of whether the issue is preserved, the Gazette is not entitled to an award of attorney fees and costs because it did not succeed in obtaining a court order requiring DPS to allow it to inspect the subject records. *See id.*

¶ 57    The Gazette further argues that it is entitled to an award of fees and costs because it "prevailed on the issue of whether the [subject] records were 'personnel files'" when the court concluded, midway through the proceedings, that DPS could not withhold the subject records on that basis. But the litigation did not end there.

¶ 58    CORA does not authorize fee and cost awards on the grounds that the requester won a preliminary legal skirmish if the requester ultimately failed to win a ruling granting access to the requested documents. The relevant language of CORA provides that, "*[u]nless the court finds that the denial of the right of inspection was proper*, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant

26

in an amount to be determined by the court." § 24-72-204(5)(b) (emphasis added).

¶ 59 At the conclusion of the proceedings, the court determined that "the denial of the right of inspection was proper." In light of this determination and our affirmance of the court's ruling, the Gazette was not a "prevailing applicant" under CORA. *See Colo. Republican Party v. Benefield*, 337 P.3d 1199, 1206 (Colo. App. 2011) ("[A] prevailing applicant is one who obtains an order directing 'the custodian to permit . . . inspection' of a given public record." (quoting § 24-72-204(5), C.R.S. 2011)), *aff'd*, 2014 CO 57, 329 P.3d 262.

¶ 60 Thus, we deny the Gazette's request for an award of attorney fees and costs.

## III.   Disposition

¶ 61 The order is affirmed.

JUDGE J. JONES and JUDGE HAWTHORNE concur.